[No. H030099. Sixth Dist. May 31, 2007.]

H.B. FULLER COMPANY, Plaintiff and Respondent, v.
JOHN DOE, Defendant and Appellant.

## COUNSEL

Jennifer Stisa Granick for Defendant and Appellant.

Davis Wright Tremaine, Matthew Leish, Duffy Carolan and Michelle D. Fife for California First Amendment Coalition as Amicus Curiae on behalf of Defendant and Appellant.

Corynne McSherry for Electronic Frontier Foundation as Amicus Curiae on behalf of Defendant and Appellant.

Squire, Sanders & Dempsey and Jose Luis Martin for Plaintiff and Respondent.

## Opinion

**RUSHING, P. J.**—This case involves an attempt by plaintiff H.B. Fuller Company to discover by subpoena the true identity of an anonymous defendant, appearing here as John Doe, who allegedly disclosed confidential information on a Web site in violation of an employment agreement between plaintiff and defendant. The trial court denied defendant's motion to quash, relying in part on documents filed under seal pursuant to a stipulated order. Those documents, and additional documents referring to them, have been filed under seal in this court pursuant to the trial court's order. Defendant has moved this court to unseal all such materials. Plaintiff contends that we should deny the motion in deference to the trial court's order. Because we detect no justification for keeping the documents under seal, we will grant the motion.

### Background

It appears that plaintiff H.B. Fuller Company (sometimes Fuller) is a manufacturer of adhesives and other materials, with its headquarters in St. Paul, Minnesota. According to Fuller's human resources director, all current Fuller employees in the United States have signed an undertaking in writing not to disclose "confidential information," as there defined, "during or after employment by Fuller."

Michele Volpi declared under seal that he is the president and manager of Fuller's global adhesives division. On November 1, 2005, he invited all headquarters employees to a "Town Hall Meeting," which about 150 of them attended. At the start of the meeting he "advised all attendees" that the information he was about to divulge "constituted H. B. Fuller's business confidential and proprietary information that was not to be publicly disclosed consistent with each employee's contract with the Company." He "then conveyed to the employees sensitive information affecting H. B. Fuller's Global Adhesives Division, including details about the reorganization of the Global Adhesives Division, as well as key global management, operational and staff changes."

That evening, Volpi declared, he saw the first of two messages underlying this litigation on an Internet message board dedicated to discussion of plaintiff's affairs. The message was posted by a user identified only as lashwr45. It described "[y]et another reorg of Adhesives" that had been "announced" that day. The details as disclosed are only partly intelligible to the casual reader. Two days later Volpi saw a second message, also by

lashwr45, containing further details, including, "Gone is the Engineering manager hired a year ago." Volpi opined that the messages disclosed confidential information discussed at the Town Hall Meeting, which lashwr45 "had posted . . . in violation of his or her employment agreement with H. B. Fuller, and in disregard of my instruction to not disclose the information outside of the Company."

On November 29, 2005, attorneys for plaintiff tried to file a complaint in the District Court for the Second Judicial District, Ramsey County, Minnesota, against "John Doe a/k/a 'lashwr45.' " Plaintiff's Minnesota attorney declared below that he was unable to file the complaint because, under Minnesota law, a civil action is commenced by service, not filing. The complaint contained the allegation, on information and belief, that defendant was a Minnesota resident and employee of Fuller and that he had posted confidential business information, learned at the November 1, 2005 meeting, in violation of his nondisclosure agreement.[1] The complaint sought damages for breach of contract, plus injunctive relief.

The message board on which the messages appeared was part of an investment-oriented Web site operated by Yahoo! Incorporated (Yahoo), a corporation headquartered in Sunnyvale, California. In order to discover the identity of lashwr45, counsel for plaintiff petitioned the Minnesota court for a commission to secure a subpoena duces tecum in California directing Yahoo to produce materials and information concerning lashwr45. The court granted the petition and a commission duly issued.

On December 1, 2005, plaintiff commenced this proceeding under Code of Civil Procedure section 2029.010 by filing a declaration of counsel placing the Minnesota commission before the superior court and stating an intention to issue a subpoena duces tecum directing Yahoo to produce, on December 22, 2005, information identifying, or aiding in discovering the identity of, lashwr45.. Such a subpoena was issued, and apparently served, on December 1, 2005.

On December 16, 2005, defendant—appearing as "John Doe aka 'lashwr45' "—filed a motion to quash the subpoena on the ground that Fuller had "not made a showing that its interest in obtaining the true identity of Doe outweighs Doe's First Amendment right to speak anonymously on the Internet."

---

[1] Although plaintiff used "he or she" in referring to defendant in the complaint, defendant's Minnesota attorney, who declared that he knows defendant personally, used the masculine pronoun.

About two weeks before the motion to quash was to be heard, the parties submitted a stipulation and proposed order placing under seal certain materials relating to the motion to quash. The document recited that plaintiff intended to file under seal a declaration in opposition to the motion, the contents of which it "contend[ed] . . . constitute its confidential information." It further stated that Doe might file a reply declaration under seal, the contents of which he "contend[ed] . . . may contain confidential and/or private information." It provided that (1) Fuller could file the declaration of Michele Volpi under seal; (2) any reply by Doe "reflect[ing] the contents" of the Volpi declaration would also be filed under seal; (3) Doe could file a declaration without revealing his identity, although Fuller could challenge its admissibility; and (4) implicitly, Doe could also file a sealed declaration. The stipulation recited that "any information provided pursuant to a declaration that is filed under seal will be kept confidential at least until the Court provides its Order on John Doe's Motion to Quash," and that the parties "agree to seek the Court's guidance with respect to the confidentiality of these declarations at the oral argument" on the motion. The trial judge signed the document, making it an order of court.

On February 10, 2006, the court below heard argument on the motion to quash and took it under submission. On March 15, 2006, the court issued an order, accompanied by a lengthy opinion, denying the motion to quash.

On April 11, Doe took the present appeal. This court issued a temporary stay followed by a writ of supersedeas staying enforcement of the subpoena pending the outcome of the appeal. Defendant filed his opening brief under seal pursuant to the trial court's sealing order. (See Cal. Rules of Court, rules 2.551(b)(5), (c), 8.160(c)(1).)[2] At the same time, however, he filed the instant motion to unseal all documents. Fuller opposes the motion and has lodged its own brief on the merits under seal.

DISCUSSION

I. *Appellate Jurisdiction*

Generally, discovery orders are not appealable. (*Warford v. Medeiros* (1984) 160 Cal.App.3d 1035, 1040 [207 Cal.Rptr. 94].) That generalization is inapplicable, however, where the order is ancillary to litigation in another jurisdiction and operates as the last word by a California trial court on the

---

[2] All further references to rules are to the California Rules of Court.

matters at issue. (*Id.* at pp. 1040–1041.) If the present order were not appealable, it would be reviewable by extraordinary writ since enforcement of the subpoena would plainly deprive defendant of an important interest—his First Amendment right to speak anonymously—without an effective appellate remedy. In such a case we have the power to view the notice of appeal as a petition for an extraordinary writ. (See 9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, § 88, pp. 147–149.) We would exercise that power here, but find it unnecessary to do so because we hold the order appealable.

## II.  *KNBC*

■ Doe's basic contention on this motion is that there is no justification for continuing to withhold the sealed materials from public view. To place the contention in context we must first review the landmark decision in *NBC Subsidiary (KNBC-TV), Inc. v. Superior Court* (1999) 20 Cal.4th 1178, 1181–1182, 1217–1218 [86 Cal.Rptr.2d 778, 980 P.2d 337] (*KNBC*), which held that trial courts cannot close civil proceedings to the public, or seal the records of such proceedings, except upon noticed hearing and findings that an "overriding interest" favors closure and cannot be adequately protected by any means less derogatory of the public's right of access to court business. In that case, the trial court had closed proceedings involving Hollywood celebrities in order to shield the jury from information not in evidence but placed on the record and published during the course of the trial. It refused to follow cases limiting its power to exclude the public, reasoning that they were " 'not that recent' " and that a rejection of their restrictions was justified by unspecified recent episodes of prejudicial disclosure. (*Id.* at pp. 1184–1185 & fn. 2.)

■ The Supreme Court rejected this view. Chief Justice George pointed out that by statutory mandate, " 'the sittings of every court shall be public' " except as otherwise provided by law. (*KNBC, supra*, 20 Cal.4th at p. 1191, quoting Code Civ. Proc., § 124 (section 124).) This provision, along with the common law, had long been held to vest a right *in the public* " 'to attend sessions of the court,' " at least in criminal matters, in the absence of " 'circumstances which make [closure] a proper exercise of the court's discretion in order to accord the defendant a fair trial.' " (*KNBC, supra*, 20 Cal.4th at p. 1194, italics omitted, quoting *Kirstowsky v. Superior Court* (1956) 143 Cal.App.2d 745, 752 [300 P.2d 163] (*Kirstowsky*).) Even when justified by such circumstances, the restriction on access had to be tailored to the justification; thus it was error to close an entire trial on the defendant's averment that she would be unable to testify in her defense if required to do so publicly. (*Kirstowsky, supra*, 143 Cal.App.2d at pp. 748, 753–754.)

■ Moreover, federal cases had recognized a right of public access under the First Amendment, the scope of which right in a particular setting was to be determined by the " 'weight of historical practice' " and " 'the specific structural value of public access in the circumstances . . . .' " (*KNBC, supra,* 20 Cal.4th at p. 1202, quoting *Richmond Newspapers, Inc. v. Virginia* (1980) 448 U.S. 555, 598 [65 L.Ed.2d 973, 100 S.Ct. 2814] (conc. opn. of Brennan, J.) (*Richmond Newspapers*).) Under those authorities, an order closing a proceeding "at the unfettered discretion of the trial court" is constitutionally unsound. (*KNBC, supra,* 20 Cal.4th at p. 1202, citing *Richmond Newspapers, supra,* 448 U.S. at p. 598.) A statute mandating closure of certain proceedings was subject to strict scrutiny. (*Globe Newspaper Co. v. Superior Court* (1982) 457 U.S. 596, 606–607 [73 L.Ed.2d 248, 102 S.Ct. 2613]; see *KNBC, supra,* 20 Cal.4th at pp. 1202–1203.) To sustain an order closing proceedings required "findings specific enough that a reviewing court can determine whether the closure order was properly entered." (*Press-Enterprise Co. v. Superior Court of Cal.* (1984) 464 U.S. 501, 510 [78 L.Ed.2d 629, 104 S.Ct. 819] (*Press Enterprise*); see *KNBC, supra,* 20 Cal.4th at pp. 1203–1204.) The findings had to identify an "overriding interest" justifying the closure. (*Press-Enterprise, supra,* 464 U.S. at p. 510; *KNBC, supra,* 20 Cal.4th at p. 1204.) Moreover the closure had to be tailored to the justifying interest, and had to rest on an absence of less restrictive alternatives to protect that interest. (*Press Enterprise, supra,* 464 U.S. at pp. 511–513; see *Waller v. Georgia* (1984) 467 U.S. 39, 48–49 [81 L.Ed.2d 31, 104 S.Ct. 2210]; *Press-Enterprise Co. v. Superior Court* (1986) 478 U.S. 1, 13–14 [92 L.Ed.2d 1, 106 S.Ct. 2735]; *KNBC, supra,* 20 Cal.4th at pp. 1204–1207.)

■ Rejecting a proposed distinction for these purposes between civil and criminal proceedings, the Chief Justice concluded that, "in general, the First Amendment provides a right of access to ordinary civil trials and proceedings, . . . and . . . section 124 must . . . be interpreted in a manner compatible with those standards."[3] (*KNBC, supra,* 20 Cal.4th at p. 1212, fn. omitted; see *id.* at pp. 1191–1192, 1216; *id.* at p. 1197 [statute must be so construed to avoid "serious constitutional challenge"].) Thus "courtroom proceedings in ordinary civil cases are 'presumptively open' " and closure is "preclude[d]" unless (1) the proceeding does not match the analytical framework of the federal cases, which predicated openness on considerations of historical tradition and civic utility; or (2) after notice to the public of the contemplated closure, the trial court "expressly find[s] that (i) there exists an overriding

---

[3] As in *KNBC*, the instant case is not among, and raises no issue concerning, proceedings that are categorically closed to the public, e.g., juvenile court matters. (See *KNBC, supra,* 20 Cal.4th at p. 1212, fn. 30.)

interest supporting closure and/or sealing; (ii) there is a substantial probability that the interest will be prejudiced absent closure and/or sealing; (iii) the proposed closure and/or sealing is narrowly tailored to serve the overriding interest; and (iv) there is no less restrictive means of achieving the overriding interest." (*Id.* at pp. 1216–1218, fns. omitted.)

The court concluded that the closure order there did not satisfy these standards. While protection of civil litigants' rights to a fair trial "is, in the abstract, an overriding interest," the trial court had made no finding that "prejudice to that interest was substantially probable absent closure and temporary sealing," and the appellate record did not support such a finding. (*KNBC, supra,* 20 Cal.4th at p. 1222, fn. omitted.) Moreover, the court's "blanket and sweeping order closing the courtroom during *all* nonjury proceedings was not narrowly tailored: the trial court wholly failed to identify particular proceedings that would or did contain information justifying closure." (*Id.* at p. 1223, original italics.) Finally, the trial court had not made, and the record would not support, a finding that the interests supposedly justifying the closure order could not have been adequately protected by means less burdensome to constitutional interests. (*Id.* at p. 1225.) Accordingly, the court's order for closure and sealing "fail[ed] to meet the minimum requirements imposed by section 124, as interpreted in light of the requirements of the First Amendment." (*Ibid.*)

### III. *Rules of Court*

■ To effectuate the principles embodied in *KNBC,* the Judicial Council adopted rules 2.550, 2.551, and 8.160.[4] (Advisory Com. com., rule 2.550.) They are intended to "provide a standard and procedures for courts to use when a request is made to seal a record." (*Ibid.*) With certain exceptions discussed in part below, they govern all orders to seal court records. (Rule 2.550(a).) They provide that no record may be sealed without a court order. (Rule 2.551(a).) Nor may a court "permit a record to be filed under seal based solely on the agreement or stipulation of the parties." (Rule 2.551(a).) A sealing order must be sought by written motion or application. (Rule 2.551(b)(1).) The moving party must lodge the record in question with the court, which will hold it "conditionally under seal" pending determination of the motion. (Rule 2.551(b)(4).) Beyond that, the court may order a record sealed "only if it expressly finds facts that establish: [¶] (1) There exists an

---

[4] More precisely, the Judicial Council adopted their predecessors, former rules 243.1, 243.2, and 12.5. We see no material distinction between the former rules and the present ones, which took effect January 1, 2007.

overriding interest that overcomes the right of public access to the record; [¶] (2) The overriding interest supports sealing the record; [¶] (3) A substantial probability exists that the overriding interest will be prejudiced if the record is not sealed; [¶] (4) The proposed sealing is narrowly tailored; and [¶] (5) No less restrictive means exist to achieve the overriding interest." (Rule 2.550(d).) Any sealing order must "(A) Specifically state the facts that support the findings; and [¶] (B) Direct the sealing of only those documents and pages, or, if reasonably practicable, portions of those documents and pages, that contain the material that needs to be placed under seal. All other portions of each document or page must be included in the public file." (Rule 2.550(e)(1).)

■ Once sealed, a record can only be unsealed by order of court. (Rule 2.551(h)(1).) So long as it remains under seal, all parties must refrain from filing anything not under seal that would disclose the sealed matter. (Rule 2.551(c).) If a party files a new document referring to sealed matter, it must submit an unredacted version of the document under seal and a redacted one for the public record. (Rule 2.551(b)(5).) On appeal, any document ordered sealed in the trial court, and any document referring to it, must also be placed under seal in the appellate record unless the appellate court orders otherwise. (Rule 8.160(c)(1), (e)(4); see rule 8.160(g).) Any party may move the appellate court to unseal any previously sealed matter. (Rule 8.160(f)(2).) In deciding the motion, the court must consider the factors set out in rule 2.550. (Rule 8.160(f)(4).)

## IV. *Standard of "Review"*

Defendant contends that the trial court's sealing order was erroneous and therefore cannot remain in effect. Plaintiff replies that the question whether to seal the materials was entrusted to the trial court's discretion, and that we should "accord considerable deference to [its] decision . . . ." Both of these formulations misconceive the issue before us by focusing on the soundness of the trial court's order. This is not an appeal from the trial court's sealing order; it is a motion for this court to take certain actions with respect to its own records. We are not being asked to set aside, or take any other action in derogation of, the existing order. We are instead being asked to decide whether materials filed in *this* court should be and remain sealed, or whether they should be open, like most of our records, to public inspection.

This court is master of its own files. The presumption of correctness that attends a challenged judgment has no bearing on our power over our records.

Indeed, it is not proper to speak of a "standard of review" at all in this context, for we are not "reviewing" anything, but deciding whether to direct the clerk of this court to make certain records available to the public. In the absence of prescriptive law to the contrary, or a showing that the trial court's order triggers some presumption or rule of preclusion, we will decide that question quite independently of any action the trial court may have taken.

The primary if not sole support for plaintiff's contrary contention is *In re Providian Credit Card Cases* (2002) 96 Cal.App.4th 292, 301–302 [116 Cal.Rptr.2d 833] (*Providian*), where the court stated in dictum that if it were engaged in "review of an order to seal records," it would "proceed in two stages. First we would examine the express findings of fact required by [former] rule 243.1(d) to determine if they are supported by substantial evidence. . . . [Citations.] Next, we would decide whether, in light of and on the basis of these findings, the trial court abused its discretion in ordering a record sealed." But as the reference to "review" suggests, that was an *appeal from an order concerning the sealing of records*. As such it constituted a direct challenge to that order. Unremarkably, the court concluded that such an appeal is governed by familiar principles of appellate deference to factual and discretionary determinations embodied in a challenged order or ruling. (*Id.* at pp. 299–303.) Here, in contrast, we are not concerned with the validity of the trial court's order when it was made, let alone its validity now. We are concerned only with whether records in our own files should be sealed. There is simply no occasion to defer to the trial court's rulings on this point. (See *Huffy Corp. v. Superior Court* (2003) 112 Cal.App.4th 97, 105 [4 Cal.Rptr.3d 823] [on sua sponte consideration whether documents filed under seal should remain sealed, Court of Appeal would exercise independent judgment "[b]ecause these are records maintained by the clerk of this court"; case differed from *Providian, supra,* 96 Cal.App.4th 292, in that the court there was "not directly reviewing·the respondent court's sealing order" and "not ordering the respondent court to change its stipulated sealing order," but considering "whether this court's records must be made available to the public" in light of affected party's showing].)[5]

---

[5] Plaintiff misreads *Huffy* by asserting that the question there was "whether the defendant had made a sufficient showing to make the court's records available to the public." The actual question was whether the defendant had made a sufficient showing to *prevent unsealing* the record. (See *Huffy Corp. v. Superior Court, supra,* 112 Cal.App.4th at p. 99 [defendant filed 2,589 pages under seal, then "narrowed its list of papers it desired to have remain under seal"]; *id.* at p. 105 ["we are addressing the question of whether this court's records must be made available to the public given the showing made by defendant"].)

Plaintiff also implies that defendant has, by his choice of arguments, converted this motion into an attack on the trial court's order. Plaintiff cites selected assertions by defendant to show that the latter's motion to unseal "is plainly a request for this Court to review the trial court's . . . Order sealing" documents. The short answer to this argument is that we are not bound by any party's mistaken impression of our power over our own files.

We acknowledge the abstract possibility that particular circumstances might arise in which an appellate court would be ill advised to disregard a trial judge's *findings of fact* bearing on the appropriateness of a sealing order. But this possibility can hardly justify deference here, where the trial court acted on the basis of a stipulation that did not purport to establish a concrete factual basis for a sealing order. The only stated grounds for sealing the affected documents were that (1) plaintiff "*contends* that the contents of [its opposition] declaration constitute its confidential information"; (2) defendant might file a reply memorandum, the contents of which he "*contends . . . may* contain confidential and/or private information"; and (3) either party might refer to material thus filed under seal by the other party, in which case such references would likewise be sealed. It is readily apparent from this summary that there was no factual basis whatever for the sealing order, only nebulous and conclusory "conten[tions]" by both parties. There was thus no factual issue for the court to try. The court had no occasion to, and did not, make any findings to which we could defer, even if deference were called for.

Moreover the stipulation appears to have been limited in duration. It provided in pertinent part for the sealing of certain materials "at least" until a ruling on the motion to quash. If this was ambiguous, it seems clear that the stipulation had no *clearly agreed* effect beyond that event. The parties did agree to "seek the Court's guidance with respect to the confidentiality of these declarations at the oral argument on John Doe's Motion to Quash." But they neglected to carry out this mutual undertaking. As previously noted, the lack of any agreement as to the *factual* underpinnings of any sealing of documents is reflected in the recital that each party "contend[ed]" materials filed by it were, or might be, confidential or private.

In sum, the trial court never found, and had no factual basis to find, *any* facts supporting the sealing order. There are no findings, express or implied, to which we might defer.

V. *Discovery Exception*

■ There is little doubt that the continued sealing of these documents cannot be justified under the rules of court cited above. Those rules forbid sealing documents solely upon stipulation and require specific findings including an "overriding interest that overcomes the right of public access to the record . . . ." (Rule 2.550(d)(1); see 8.160(f)(4) ["In determining whether to unseal a record, [a reviewing] court must consider the matters addressed in rule 2.550(c)–(e)"].) There is no concrete evidence of *any* interest, let alone

an overriding one, that would be damaged by the unsealing of these materials. At most there are contentions and conclusory averments that some unspecified statements in the posted Web messages were "confidential" or "private" in some sense.

Plaintiff contends, however, that these rules of court have no application here because this was a discovery proceeding expressly exempted from their operation. Plaintiff cites rule 2.550(a)(3), which provides, "These rules do not apply to discovery motions and records filed or lodged in connection with discovery motions or proceedings. However, the rules do apply to discovery materials that are used at trial or submitted as a basis for adjudication of matters other than discovery motions or proceedings." Plaintiff contends that since the present matter is solely concerned with a motion to quash a discovery subpoena, such a motion is a "discovery motion," and the rules do not apply.[6]

We doubt the soundness of this view. The rules' exception for discovery matters is based on language in *KNBC* to the effect that federal cases have not recognized the same presumptive right of access to discovery materials that they have found in courtroom proceedings.[7] However the rationale for

---

[6] Defendant notes that when a motion to unseal is made in a reviewing court, the court "must consider the matters addressed in rule 2.550(c)–(e)." (Rule 8.160(f)(4), italics added.) He contends that the failure to cross-reference rule 2.550(a)(3), which exempts discovery matters, reflects an intention that when made in a reviewing court, all motions to unseal will be decided under the *KNBC* standards, whether or not the documents were originally sealed in a discovery proceeding. We find it unnecessary to reach this argument.

[7] At one point the *KNBC* court wrote, "Numerous reviewing courts . . . have found a First Amendment right of access to civil litigation documents filed in court as a basis for adjudication. [Citations.] . . . [¶] By contrast, decisions have held that the First Amendment does not compel public access to discovery materials that are neither used at trial nor submitted as a basis for adjudication. (See, e.g., *Seattle Times Co.* v. *Rhinehart* (1984) 467 U.S. 20 [81 L.Ed.2d 17, 104 S.Ct. 2199]; [*Matter of*] *Continental Illinois Securities* [(7th Cir. 1999)] 732 F.2d [1302,] 1309, fn. 11; *Matter of Krynicki* (7th Cir. 1992) 983 F.2d 74, 75–76 (order by Easterbrook, J.) . . . ; Fenner & Koley, [*Access to Judicial Proceedings: To Richmond Newspapers and Beyond* (1981)] 16 Harv. C.R.-C.L. L.Rev. [415,] 434 ['The presumption of access does not apply until the documents or records of such proceedings are filed with the court or are used at a judicial proceeding'].)" (*KNBC, supra,* 20 Cal.4th at pp. 1208–1209, fn. 25.)

Later the court declined to follow a case minimizing the constitutional valence of contemporaneous access to documentary evidence produced in discovery and used in a summary judgment motion. (*KNBC, supra,* 20 Cal.4th at p. 1220, fn. 43, criticizing *In re Reporters Comm. for Freedom of the Press* (D.C. Cir. 1985) 249 U.S. App.D.C. 119 [773 F.2d 1325, 1337, fn. 9].) The Chief Justice instead endorsed the view that documents produced in discovery, but then filed in connection with summary judgment motions, were subject to the presumption of public accessibility. (*KNBC, supra,* at p. 1220, fn. 43, citing *Republic of Philippines v. Westinghouse Elec.* (D.N.J. 1991) 139 F.R.D. 50, 59.)

this view is presumably that modern discovery is a preliminary evidence-finding process in which policy favors the broadest possible disclosure so that all admissible evidence may be found and set aside for eventual use in the truth-finding process of trial. The discovery process, which is intended to be largely self-enforcing, would be greatly impeded if every document a party might produce was ipso facto open to public inspection. Records now freely disclosed under protective orders, often entered by stipulation, would require laborious collateral litigation to establish grounds for a sealing order. This would impose a substantial new burden on parties as well as on the courts, all in derogation of a process that is largely a modern invention and has never been conceived as open to the public. Moreover, since discovered materials are not court records until filed in court in connection with a motion or trial, it is unclear how a right of public access would be effectuated. It is therefore eminently sound to exempt discovered material from the presumptive right of public access recognized in *KNBC*. Such access is favored neither by tradition nor by functional analysis.

It is far less clear that *all* "discovery motions and records filed or lodged in connection with discovery motions or proceedings" (rule 2.550(a)(3)) can be categorically exempted from the operation of the rules without in some cases offending the constitutional underpinnings of *KNBC*. Certainly it can be argued that materials filed in connection with routine discovery motions may be subsumed within the rationale described above. Such materials will typically be filed or lodged with the court not to decide any substantive right of a party but to decide the quintessentially procedural question of whether and under what conditions the materials must be produced in discovery. To require the moving party to expose the materials to public view, or to prove that there is an overriding interest against their disclosure, merely so that he can contest his *opponent's* right to see them, would be patently absurd. If he is right that his opponent has no right to them, then surely he should not have to risk making them public records merely by seeking to prove his point.

But not all discovery motions involve routine matters or essentially procedural questions. At the heart of some discovery motions are questions of great significance to members of the public. The present case is one of them. While it may be said to arise from a "discovery motion"—a motion to quash a discovery subpoena—the discovery in question is not merely ancillary or preliminary to some larger litigation but is the whole end and purpose of the case, at least insofar as California courts are concerned. Moreover, the information sought is invested with a substantial constitutional interest, i.e., the First Amendment right to speak anonymously. (See *Rancho Publications v. Superior Court* (1999) 68 Cal.App.4th 1538, 1547 [81 Cal.Rptr.2d 274].) The

court's denial of the motion to quash did not merely determine some ancillary procedural point but, if affirmed by this court, inflicts upon a citizen an irrevocable loss of that constitutional interest. While no historical analog for such a proceeding comes readily to mind, the structural utility of allowing public access in a case of this kind is at least as great as that of allowing public access to a routine civil trial. Public scrutiny will encourage judicial actors to take pains to act with solicitude for cherished constitutional rights, and will help would-be anonymous speakers to ascertain the standards that will govern a judicial decision to strip them of anonymity. The deeper the public's understanding of judicial treatment of these issues, the better equipped the public will be to, for instance, seek legislative modification of the governing rules and procedures. A court's decision to lift the constitutionally infused shield of anonymity is, in short, a matter of deep and legitimate public concern, and that concern is significantly impaired whenever such a decision is made, as it was here, upon secret evidence.

We would therefore be strongly inclined to hold that even if the rules of court are by their terms inapplicable to this case, the underlying constitutional principles of *KNBC*, which those rules carry into effect, *do* apply. We do not here decide the issue, however, for even if something less than *KNBC*'s stringent standard applies, we can see no substantial basis for maintaining the documents at issue under seal. There is more than sufficient cause to unseal them, for even if the case were not infused with any particular constitutional concern, plaintiff has not identified any significant interest that is served by withholding any of this information from public view.

## VI. *Sufficiency of Cause to Maintain Sealed Status*

■ Whether or not the stringent requirements of *KNBC* apply, a reasoned decision about sealing or unsealing records cannot be made without identifying and weighing the competing interests and concerns. Such a process is impossible without (1) identifying the specific information claimed to be entitled to such treatment; (2) identifying the nature of the harm threatened by disclosure; and (3) identifying and accounting for countervailing considerations. The burden of presenting information sufficient to accomplish the first two steps is logically placed upon the party seeking the sealing of the documents, who is presumptively in the best position to know what disclosures will harm him and how. This means at a minimum that the party seeking to seal documents, or maintain them under seal, must come forward with a specific enumeration of the facts sought to be withheld and specific reasons for withholding them.

Here plaintiff has never identified any *specific* facts disclosure of which would harm any identified interest. The first sealed document, the declaration of Michele Volpi, opens with matters that are manifestly *not* confidential in any sense of the word, e.g., the declarant's place of residence; his status as an employee and officer of Fuller; and a summary of Fuller's history, business, size, and the like. It then moves into internal matters that, while conceivably confidential, are probably not so: that Fuller conducts quarterly Town Hall Meetings with its employees; that Volpi generally tells attendees that the information imparted at these meetings is confidential and should not be publicly disclosed, particularly in view of Fuller's status as a publicly traded company; that Fuller has sent printed matter to its employees reminding them of their duty to safeguard confidential information; and so on. The declaration then recounts the events of November 1, 2005, when Volpi conducted such a meeting and then, later in the day, saw the first of two messages on the Yahoo site that he believed were posted by an employee in violation of his or her confidentiality agreement.

Nowhere does the declaration identify specific facts imparted at the meeting that were confidential in any legally significant sense, or were not available to the public (or likely to become available) by means other than violations of the employment agreement. Nor does it indicate what facts in the offending messages met that description. It states only, in circuitous and conclusory language, that defendant "posted H. B. Fuller's confidential information," that "the content of the information posted . . . contained [*sic*] the confidential information that I had earlier conveyed . . . at the Town Hall Meeting," that Volpi believed "that this individual had posted the information in violation of his or her employment agreement," and that the second message "also disclosed the information that I conveyed at the Town Hall Meeting."

Nothing we see in the messages obviously constitutes information that ought to be withheld from the public, or disclosure of which will inflict any harm on plaintiff. The first describes, in terms largely opaque to the uninitiated, "[y]et another reorg" of "Adhesives." The second message appears to provide more details, including a reshuffling of management positions, and ruminations about certain "outsourcing" issues, perhaps involving information systems. Nothing about its contents is self-evidently "confidential" in any presently relevant sense. Insofar as similar information was acquired by plaintiff's employees in the course of their employment, it may or may not fall within the definition of "confidential information" set forth in their nondisclosure agreements. That question is relevant to the determination of their *liability*, if any, for disclosing such information. It may therefore be

relevant to the question whether plaintiff is entitled to compel disclosure of defendant's identity. (See *Rancho Publications v. Superior Court, supra,* 68 Cal.App.4th 1538, 1550–1551.) But those are not the questions currently before this court. The present question is whether allowing public access to court records containing this information inflicts a harm on plaintiff sufficient to justify withholding those records from public examination. The possibility that the original disclosure of the information by defendant breached a contract with plaintiff has no discernible bearing on that question.

Plaintiff identifies nothing in the posted messages or the sealed records so sensitive that the public's right of access should give way. In opposing the present motion, plaintiff quotes Volpi's averment below that information imparted to employees at Town Hall Meetings includes "business strategy and forecasts, competitive outlook, [and] product development . . . ." But plaintiff has never identified anything in the posted messages that discloses information in any of these categories. Its entire argument is devoted to subsidiary or peripheral issues such as the correctness of the trial court's order, alleged inconsistencies in defendant's position, and the applicability of specific rules and precedents. At no time does plaintiff squarely address the central question, which is what harm the unsealing of these documents, or any part of them, will inflict upon its interests.

Indeed the Volpi declaration is strikingly vague on the relevant points. In the first passages cited in plaintiff's opposition, Volpi declares, "I am careful to inform H. B. Fuller employees of this obligation [of nondisclosure] given that H. B. Fuller is a publicly traded company whose stock price and competitive position could be affected by the public disclosure of confidential business information." This statement is notable not only for its abstract and generic character—it says nothing at all about the actual contents of the posted messages—but also its odd attenuation through hearsay. All it really purports to establish is what Volpi says to employees. Strikingly absent is a direct statement that such disclosures do, or even that they can, injure plaintiff.

Next plaintiff cites the following averment by Volpi: "Given the sensitive strategic information that I disclosed to H. B. Fuller employees at the Town Hall Meeting . . . I took particular care to advise the attendees that this information was internal, private and confidential, and that the information should not be publicly disclosed under any circumstances. Indeed, my concern was that, if details about an impending reorganization were publicly available, it could compromise H. B. Fuller's competitive standing in the

industry by making it seem that H. B. Fuller was weak, unable to focus on the market or product development, or that it was dealing with internal turmoil. Moreover, if publicly disclosed, such information could make H. B. Fuller employees—including its high-level engineers—more susceptible to solicitation by competitors. All these factors could potentially have an adverse effect on H. B. Fuller, particularly since it is a publicly traded company."

Again the averment is strangely indirect. Instead of simply stating what information in the posted messages was damaging, and how or why, it describes the thought processes leading to the declarant's decision to make certain statements to employees. Of course the thought processes are utterly irrelevant, and the statements are relevant, if at all, only to liability—not to the propriety of maintaining court documents under seal.

As a matter of pure logic, an oblique averment is not utterly without significance; logically, the statement "I thought I should tell my employees the light was green" provides some evidence that the light was green. But "The life of the law has not been logic: it has been experience." (Holmes, The Common Law (1881) <http://www.law.harvard.edu/library/collections/special/online-collections/common_law/Lecture01.php> [as of May 31, 2007].) The experience of courts over the centuries has been that one who is in a position to testify directly to facts, but who, in a formal pleading or similar submission, instead states relevant matters in an oblique, vague, attributive, conditional, incomplete, or otherwise circumlocutory manner, may be deliberately *avoiding* a direct (and thus more easily controverted) assertion. In perhaps its harshest form, this conception led to treatment of a " 'negative pregnant' "—an incomplete or equivocal denial of an opponent's allegation—as an *admission* of the alleged matter. (5 Witkin, Cal. Procedure, *supra*, Pleading, § 995et seq.) Here of course we are concerned not with denials but with positive averments. Still their peculiarly attenuated form is sufficient to raise a suspicion that a more direct statement would disclose weaknesses in plaintiff's position that the attenuation is intended to conceal.

Nor does this suspicion seem farfetched. If plaintiff specified the particular disclosures of which it complains, it would ease defendant's task of refuting the claim that those disclosures concerned "confidential information" as defined in the nondisclosure agreement. It would also open plaintiff's allegations to the response that even if a given disclosure fell within that definition, the matter disclosed was already or otherwise available to the public, such that the disclosure did not proximately cause plaintiff to sustain recoverable damages. The very nebulousness of the claimed breach suggests the possibility that plaintiff's objective was never to pursue a cause of action to judgment but only to employ the process of the court to aid an investigation into what it

supposes to be a breach of corporate security. We have previously noted "the gross impropriety of using the courts and their powers of compulsory process as a tool and adjunct of an employer's personnel department." (*O'Grady v. Superior Court* (2006) 139 Cal.App.4th 1423, 1470 [44 Cal.Rptr.3d 72].)

In any event, without a clear enumeration of *specific facts* alleged to be worthy of the extraordinary measure of maintaining our records under seal, there is simply no basis to conclude that unsealing the records will actually infringe any interest of plaintiff's or inflict any harm on it.

Similarly, plaintiff has provided no basis for a conclusion that keeping the records in question under seal will prevent the public from learning anything it does not already know, or cannot find out. It should go without saying that there is no justification for sealing records that contain only facts already known or available to the public. Here plaintiff has never even asserted *in the abstract* that facts in the offending postings were secret when posted or would long have remained so. Volpi averred that before he spoke to the employees, "fewer than 20 people knew about the strategic *changes outlined at the Town Hall Meeting.*" (Italics added.) But the question is not who knew (or could find out) what was said at the meeting; the question is who knew (or could find out) *what was posted on the Web site.* Given plaintiff's failure to point to specific injurious disclosures, it is impossible for it to establish that those disclosures had not been, or could not be, derived from lawful sources.

In the court below defendant was far more forthcoming on this issue than plaintiff, flatly declaring that he was not a Fuller employee but was a Fuller shareholder, and that he "learned about Fuller's latest reorganization plan from two separate conversations on October 31, 2005, with two different competitors of Fuller," each of whom "had knowledge of the general details regarding the reorganization plan," and each of whom told him "that they learned those details from other individuals who were not employed by Fuller." Plaintiff's only response to this declaration was to object on various grounds, including that defendant's averments were rendered unverifiable by his anonymity, such that they were more prejudicial than probative. (See Evid. Code, § 352.)[8] But regardless of the weakness *vel non* of defendant's averments *as evidence,* they highlight the possibility that the matters in the posted messages were available to the public and in fact were public knowledge, at least in the sense of being known outside the circle of Fuller employees, before the messages were posted. Plaintiff did nothing to rebut

---

[8] Plaintiff also cited Evidence Code section 711, which provides, "*At the trial of an action,* a witness can be heard only in the presence and subject to the examination of all the parties to the action, if they choose to attend and examine." (Italics added.) This statute has no bearing on declarations, verifiable or otherwise, filed in support of or opposition to motions.

this assertion, although in our view it was plaintiff's burden in the first instance to make at least some showing that the messages contained information not otherwise obtainable by the public.

Finally, whatever the state of public knowledge when the messages were posted, it is impossible, without a specification of the offending statements, to say that the matters disclosed have not *now* become public knowledge. By way of illustration only, one Web page posted in January 2007 describes plaintiff as a "company under reorganization." (Duprey, *Foolish Forecast: HB Fuller's New Paint Job* (Jan. 10, 2007) <http://www.fool.com/investing/dividends-income/2007/01/10/foolish-forecast-hb-fullers-new-paint-job.aspx> [as of May 31, 2007].) Defendant's Minnesota attorney declared that Fuller's then recent financial disclosures appeared to have dropped the term "reorganization" in favor of the nebulous euphemism "major operational improvement," but that a sophisticated investor reading its 2005 securities filings could infer a reorganization from the disclosure of a $4 million cost for "severance related expense." (Plaintiff's U.S. Securities and Exchange Com. form 8-K (filed Jan. 17, 2006) <http://yahoo.brand.edgar-online.com/fetchFilingFrameset.aspx?FilingID=4134402&Type=HTML> [as of May 31, 2007].) We need not decide the evidentiary significance or even admissibility of these matters; we offer them here merely to illustrate that plaintiff's failure to show any substantial continuing interest in withholding the posted messages from public review is not a mere technical oversight but another circumstance strongly suggesting that there is in fact no ponderable reason to maintain these records under seal.

We conclude that under any conceivable standard of decision, we need not and should not continue to withhold the record in this case, or any part thereof, from public scrutiny.

## VI. *Remedy*

Defendant suggests that if we grant the motion to unseal, we should either unseal all previously sealed materials or "strike from the record any evidence that Fuller refuses to unseal, and decide the matter based on the public record alone." Plaintiff's opposition states that there is "certainly no basis . . . to strike from the record any of the materials that were filed under seal. A review of the trial court's order [on the motion to quash] reveals that all of these materials are highly relevant to the full and fair resolution of the instant appeal and should be considered by the Court." This probably means that plaintiff would prefer leaving the disputed materials in the record unsealed rather than have them stricken. Because the point is open to some doubt, however, we will delay the effect of our order to permit plaintiff to designate materials, originally filed by it, that it would rather see stricken from the record.

### Disposition

All filings presently under seal in this matter shall be unsealed 15 days from the date of this order unless, prior to that time, plaintiff designates specific documents, originally filed by it, that it wishes the court to strike from the record. In the event plaintiff designates such documents, they will be stricken from the record and the appeal will be decided without regard to them.

Premo, J., and Elia, J., concurred.