[Civ. No. 59179. Second Dist., Div. One. July 10, 1980.]

ALICE FELLOWS et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY,
Respondent;
ALLSTATE INSURANCE COMPANY et al.,
Real Parties in Interest.

56

**COUNSEL**

Michael J. Piuze for Petitioners.

No appearance for Respondent.

Brendan Daniel Lynch and Lynberg & Nelsen for Real Parties in Interest.

**OPINION**

**JEFFERSON (Bernard), Acting P. J.\***—Five petitioners are before us seeking a writ of prohibition to review a trial court's order granting a

---

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairperson of the Judicial Council.

motion to compel further answers to interrogatories. On April 3, 1977, petitioners sustained personal injuries in a motor vehicle accident with an uninsured motorist. The motor vehicle in which plaintiffs were occupants was provided insurance through a policy issued by Allstate Insurance Company. Petitioners sought from Allstate payment of medical expenses and uninsured motorist benefits. Petitioners' claims became the subject of arbitration. The arbitrator's decision was rendered on February 8, 1978.

In October 1978, petitioners, as plaintiffs, filed against Allstate Insurance Company and several individuals as defendants, a complaint seeking damages for breach of insurance contract, a bad faith refusal to pay benefits, fraud and deceit, arising out of the failure of defendants to settle the uninsured motorist claims. These defendants are the real parties in interest before us.

During the period of the pendency of petitioners' uninsured motorist claims against real parties in interest, from April 3, 1977, through the filing of the arbitrator's decision on February 8, 1978, petitioners were represented by Donald Kottler, an attorney at law. Petitioners' civil action against real parties in interest charges, basically, that, during this period from April 3, 1977, through February 8, 1978, real parties in interest violated their duty to petitioners of fair dealing by refusing to negotiate a good faith settlement of the medical expenses claims and the uninsured motorist benefits.[1]

I

*History of Discovery Proceedings*
*Leading up to the Issues Before*
*Us of the Attorney's Work-product*
*Privilege*

In May 1979, in the civil action, defendants sought the production for copying or photographing of the entire legal file (of Attorney Kottler) that pertained to the uninsured motorist claims and arbitration of such claims. Plaintiffs resisted production of this file on various grounds, including an assertion of the lawyer-client and the attorney's work-product privileges. The trial court denied defendants' motion for

---

[1]Hereafter, for convenience, petitioners will be referred to as plaintiffs and real parties in interest will be referred to as defendants.

production, suggesting that defendants proceed in their discovery attempts by way of interrogatories to plaintiffs so that specific documents could be identified and described, thus permitting the trial court to make an appropriate ruling on plaintiffs' assertions of privilege.

Defendants then submitted interrogatories to plaintiffs to obtain information regarding the number of, and other information concerning documents in the possession of plaintiffs' former attorney regarding the uninsured motorist claims against Allstate Insurance Company. Plaintiffs responded by raising the same objections including the reassertion of the lawyer-client and attorney's work-product privileges. Defendants next moved for further answers to interrogatories. The trial court granted the motion and, on August 30, 1979, ordered plaintiffs to answer the previous interrogatories, but permitted plaintiffs to provide defendants with copies of documents in lieu of answering the interrogatories. The trial court's August 30 order provided for plaintiffs to answer the interrogatories with respect only to those documents, the copies of which were not provided to defendants. With respect to each document, the interrogatories asked whether plaintiffs were contending that such document was privileged against disclosure by virtue of the attorney's work-product privilege or the lawyer-client privilege or both. The trial court's order required that, if plaintiffs contended that a particular document was the work product of plaintiffs' former attorney, they should indicate whether they intended the privilege involved to be that of the absolute or qualified privilege and, if so, why.

Pursuant to the trial court's August 30, 1979, order, plaintiffs, on November 29, 1979, answered the interrogatories and set forth that the documents—copies of which they were not providing to defendants—numbered a total of 64 and all were privileged against disclosure by the attorney's work-product privilege. Of the 64 documents, plaintiffs' answers described them by categories such as attorney's notes; deposition summary; clients' report of examination; medical file review; letters; chronological case notes; negotiation summaries; statements and diagrams; and trial preparation and trial notes. Most of these documents were claimed by plaintiffs to fall within the absolute portion of the attorney's work-product privilege, while only a few were claimed to come within the conditional portion of this privilege.

In January 1980, defendants moved for an order to compel further answers to the interrogatories and for sanctions for failure of plaintiffs to comply with the previous trial court's order. Plaintiffs filed opposi-

tion to this motion of defendants. This motion was finally ruled on by the trial court on April 1, 1980. The trial court ruled that all documents as to which the sole objection of plaintiffs was that of the attorney's work-product privilege must be produced by plaintiffs without qualification. The trial court placed its ruling on the ground that the attorney's work-product privilege is not applicable to litigation which is subsequent to the completion of the matter with respect to which the attorney's work-product privilege is claimed. It is this ruling of the trial court which plaintiffs attack in the prohibition writ proceeding before us.[2]

## II

### *The Issues*

Defendants seek to support the trial court's ruling denying plaintiffs' claims of the attorney's work-product privilege on several grounds apart from the one ground relied upon by the trial court. Defendants urge (1) that the attorney is the holder of the attorney's work-product privilege and that the client may not assert it on behalf of the attorney; (2) that the attorney's work-product privilege was waived by plaintiffs as clients being in possession of their attorney's file and filing the civil action against defendants; (3) that plaintiffs did not make an adequate showing of preliminary facts to establish that the documents in question qualified as an attorney's "work product," and whether the "absolute" or "conditional" portion of the privilege was applicable.

## III

### *The Attorney's Work-product Privilege Does Not Terminate at the Conclusion of the Particular Matter or Litigation for Which the Work-product Was Produced but Remains Viable in Subsequent Litigation*

The trial court rejected plaintiff's claim of the attorney's work-product privilege for the 64 documents from their former attorney's file on

[2]As the trial court has made an order in a discovery matter relating to a claim of privilege, review by extraordinary writ is appropriate since it appears that the trial court may have committed error. (*Sav-on Drugs, Inc. v. Superior Court* (1975) 15 Cal.3d 1, 5 [123 Cal.Rptr. 283, 538 P.2d 739]; *Pacific Tel. & Tel. Co. v. Superior Court* (1970) 2 Cal.3d 161, 169 [84 Cal.Rptr. 718, 465 P.2d 854].)

the sole ground that the attorney's work-product privilege automatically terminated at the conclusion of the uninsured motorist claims matter and could not be asserted in the subsequent civil litigation between plaintiffs and defendants. We hold this ruling to be error.

This question has been considered primarily in other states and in the federal courts. One view has been that the attorney's work-product privilege survives to apply in subsequent litigation if there is a close relationship between the prior case in which the work-product was prepared and the subsequent litigation in which the privilege for nondisclosure is sought to be invoked. A case so holding is the Delaware case of *Riggs Nat. Bank of Washington, D.C.* v. *Zimmer* (Del. Ch. 1976) 355 A.2d 709.

The *Riggs* court set forth the principle in this language: "Some courts have held that an attorney's memorandum in a prior case involving different parties does not have the protection of the work product privilege, particularly when the prior case is remote in time and issues from the case being currently litigated. [Citations.]. Others consider that the broad purpose of the rule which is designed to encourage effective legal representation by removing counsel's fear that his thoughts will be invaded by his adversary if he records them would be frustrated if access to his files were later permitted. [Citations.] [¶] Thus, the decisions do not provide an easy answer. Each case must turn on its own facts. The decision appropriately would depend on how closely related the prior litigation is to the litigation at hand." (*Riggs, supra*, 355 A.2d 709, 716.)

In *Duplan Corp.* v. *Moulinage et Retorderie de Chavanoz* (4th Cir. 1973) 487 F.2d 480, the court rejected the connected or closely related case limitation and held that an attorney's work product remains protected from disclosure after the termination of the action in which the work product was prepared even though disclosure is sought in subsequent unrelated litigation. We believe that the *Duplan* decision represents the better view. We hold, therefore, that the attorney's work-product privilege (Code Civ. Proc., § 2016 subds. (b), (g)) survives the termination of the litigation or matter in which the work product is prepared and may be claimed in subsequent litigation—whether related or unrelated to the prior matter—to preclude disclosure of the attorney's work product. The continuance of the attorney's work-product privilege for subsequent litigation applies both to work product which falls within

the conditional portion of the privilege and to work product which falls within the absolute portion of the privilege.[3]

We deem the policy behind the creation of the attorney's work-product privilege to have equal validity in support of the principle that the privilege should not be held to terminate simply because the litigation or matter in which the attorney's work product was created has come to an end. This policy has been described as follows: "The policy is two-fold: Nondisclosure of his work product is deemed desirable (1) to encourage the attorney to make a thorough preparation for trial, including analysis of unfavorable aspects of his case, as well as the favorable aspects, and (2) to prevent one attorney from taking undue advantage of another's industry and efforts." (Jefferson, Cal. Evidence Benchbook (1972) Attorney's Work-Product Privilege, § 41.1, p. 702.)

## IV

### The Attorney's Work-product Privilege May Be Claimed by the Client Although the Privilege Belongs to the Attorney

Defendants assert that the plaintiffs had no standing to claim the attorney's work-product privilege for documents in their possession—documents received by them from Kottler, their former attorney, and claimed to constitute the "work product" of Kottler. It is the thesis of defendants that the attorney's work-product privilege belongs to the attorney only and that only the attorney—not the client—may claim the privilege to preclude disclosure of the privileged information. For this view, defendants rely upon *Lohman* v. *Superior Court* (1978) 81 Cal. App.3d 90 [146 Cal.Rptr. 171]. We conclude that *Lohman* is neither controlling nor persuasive with respect to the erroneous view espoused by defendants.

---

[3]On remand of *Duplan, supra,* 487 F.2d 480, the district court interpreted the decision of the court of appeals as applying only to work product within the conditional portion of the privilege. On a second appeal, the court of appeals made clear that work product which falls within the absolute portion of the privilege—opinion work product, which consists of an attorney's mental impressions, conclusions, opinions or legal theories—is precluded from disclosure in subsequent litigation just as if such opinion work product had been created expressly in preparation for the subsequent litigation. (*Duplan Corp.* v. *Moulinage et Retorderie de Chavanoz* (4th Cir. 1974) 509 F.2d 730, cert. den. 420 U.S. 997 [43 L.Ed.2d 680, 95 S.Ct. 1438].)

In *Lohman*, the deposition of the plaintiff's former attorney was being taken by the defendant. The defendant sought to get from the attorney testimony as to certain opinions formed by him while representing the plaintiff. The plaintiff objected, asserting both the lawyer-client privilege and the attorney's work-product privilege. The deponent-attorney indicated that he was willing to testify with respect to the opinions requested. The *Lohman* court held that, since the attorney's work-product privilege belongs to the attorney and he, as holder of the privilege, was willing to waive it, the former client could not validly assert the privilege to prevent the attorney from so testifying.

The *Lohman* court recognized that *Mack v. Superior Court* (1968) 259 Cal.App.2d 7 [66 Cal.Rptr. 280], had held that, although Code of Civil Procedure section 2016—which creates the attorney's work-product privilege—does not set forth the persons who are entitled to claim the privilege, it would adopt a rule of law that the *client* as well as the *attorney* may claim this privilege. The *Lohman* court criticized the *Mack* case because of the latter's statement that "[t]he work product privilege was created for the protection of the client as well as the attorney...." (*Mack, supra,* 259 Cal.App.2d 7, 10.) In disagreeing with *Mack*, the *Lohman* court makes the observation that "it appears that the whole thrust of the work product privilege was to provide a qualified privilege for the attorney preparing a case for trial and protecting the fruits of his labor from discovery." (*Lohman, supra,* 81 Cal.App.3d 90, 101; fn. omitted.)

The *Lohman* court is subject to criticism for its misreading of the holding of *Mack*. The *Mack* court does *not* hold that a *client* is a *holder* of the attorney's work-product privilege. The *Mack* court simply determines that, in the absence of the attorney, the client has standing to assert the privilege on behalf of the attorney, the *only holder* of the privilege. The language of *Mack* to the effect that the privilege was created in the interest of protecting the client as well as the attorney provides a basis for a judicial interpretation of Code of Civil Procedure section 2016 to permit a client to claim the attorney's work-product privilege whenever the attorney is not present to claim it himself. In *Mack*, the attorney was not present to claim the privilege while the client was present.

The *Lohman* decision itself is sound however. Since the attorney's work-product privilege belongs to the attorney, the attorney may waive it. This the attorney in *Lohman* did by agreeing to answer the questions

posed to him at his deposition. Since the attorney, as the holder of the privilege, was willing to waive it, the former client could not object.

But in the case at bench, the situation is more analogous to *Mack* than to *Lohman.* Here plaintiffs were present, in possession of the documents belonging to their former attorney, Kottler, and, in his *absence,* had standing to claim the attorney's work-product privilege on his behalf. (See Jefferson, Cal. Evidence Benchbook (1972), The Attorney's Work-Product Privilege, § 41.1, p. 702.) This judicial interpretation of the attorney's work-product privilege makes this privilege comparable to the rules governing the various privileges set forth in the Evidence Code. Thus, under the lawyer-client privilege, the client is the holder of the privilege but the lawyer is also entitled to claim the privilege for the client (Evid. Code, §§ 953, 954); under the physician-patient privilege, the patient is the holder of the privilege but the physician is entitled to claim the privilege for the patient (Evid. Code, §§ 993, 994); and under the psychotherapist-patient privilege, the patient is the holder of the privilege but the psychotherapist is entitled to claim the privilege for the patient (Evid. Code, §§ 1013, 1014).

## V

### The Attorney's Work-product Privilege Was Not Waived by Plaintiffs as Clients Being in Possession of Their Attorney's File and Bringing a Civil Action Against Defendants

Defendants contend that the filing by plaintiffs of a civil action for damages against defendants arising out of the matter of plaintiffs' uninsured motorist dispute with defendants—a dispute in which plaintiffs were represented by Attorney Kottler—should be held to constitute a waiver of Attorney Kottler's work-product privilege. Certainly Kottler's action in surrendering his file to plaintiffs, his former clients, would evidence a consent for plaintiffs to waive the privilege if they so desired. But authorization by the attorney to his client to waive the privilege cannot be construed as a waiver in and of itself. Nor can the action of an attorney in disclosing the contents of his file to his client be construed as a waiver by disclosure of the privileged material since the disclosure is not to a disinterested person (see *Kerns Constr. Co. v. Superior Court* (1968) 266 Cal.App.2d 405 [72 Cal.Rptr. 74] [attorney's consent to an expert disclosing content of his report in his deposition

testimony]) but to the client whose interest in nondisclosure is supported by the policy reasons which underlie the creation of the privilege. (Code Civ. Proc., § 2016, subd. (g).)

Does the filing and prosecution of the civil action by plaintiffs constitute a waiver of the privilege? To support their position that the answer to this question should be in the affirmative, defendants rely principally upon *Merritt v. Superior Court* (1970) 9 Cal.App.3d 721 [88 Cal.Rptr. 337], and *Fireman's Fund Ins. Co. v. Superior Court* (1977) 72 Cal.App.3d 786 [140 Cal.Rptr. 677]. Neither of those cases stands for the position asserted by defendants. In *Merritt*, the holding that the discovery sought was not barred by an assertion of the attorney's work-product privilege was based—not upon a determination of waiver of the privilege—but upon a determination that the trial court acted within its judicial discretion, as a part of the operation of the privilege, in finding that it would be unfair to deny discovery. (Code Civ. Proc., § 2016, subd. (b).)

The *Fireman's Fund* case held only that a defendant was entitled to take the deposition of plaintiff's attorney who represented plaintiff in the prior matter. The court remarked: "It does not appear that petitioner seeks to obtain privileged information or counsel's work product. Of course if such attempt is made during the deposition, Mr. Smolen [the deponent-attorney] will have available adequate means to prevent it." (*Fireman's Fund, supra,* 72 Cal.App.3d 786, 790.)

We thus reject defendants' theory that plaintiffs waived the attorney's work-product privilege by filing and prosecuting the civil action against defendants.

## VI

■ *The Question of Whether Plaintiffs Failed to Make an Adequate Showing of the Preliminary Facts to Establish That the Documents Sought by Defendants Qualified as "Work Product" or Whether Such Documents Came Within the Absolute or Conditional Portion of the Attorney's Work-product Privilege*

Defendants assert that the trial court's order denying plaintiffs' claim of the attorney's work-product privilege for the 64 documents in dispute

may be sustained on the basis that plaintiffs failed to make a showing of preliminary facts to establish that the privilege applied to the documents in question. The dispositive answer to this contention of defendants is that the trial court did not consider the question of whether plaintiffs had made an adequate showing since the denial of plaintiffs' claim of privilege was placed squarely on the sole ground that the attorney's work-product privilege terminates with the termination of the litigation or matter for which the privileged material was prepared. Nevertheless, our review of the record below negates any conclusion that, as a matter of law, plaintiffs failed to make a showing that would permit the trial judge to hold that neither the absolute portion nor the conditional portion of the privilege was applicable to any of the 64 documents making up the file of plaintiffs' former Attorney, Kottler.

■ In connection with the conditional portion of the attorney's work-product privilege, the governing principle is set forth in the following language: "The party claiming the attorney's work-product privilege has the initial burden of establishing that the matter sought to be disclosed comes within the concept of an attorney's work product. But the party seeking disclosure has the burden of establishing that a *denial* of disclosure will (1) unfairly prejudice him in preparing his claim or defense, or (2) result in an injustice. The judge must weigh the evidence presented to support such a contention against any evidence to support the competing interest of protecting the attorney who claims the privilege for his efforts and industry in trial preparation." (Jefferson, Cal. Evidence Benchbook (1972) Attorney's Work-Product Privilege, § 41.1, p. 703.)

On the other hand, with respect to the absolute portion of the privilege, the work product of an attorney is immune from discovery under *any* circumstances if such work product consists of a writing that reflects an attorney's impressions, conclusions, opinions, or legal research or theories. (Code Civ. Proc., § 2016, subd. (b).)

As we have pointed out previously, plaintiffs gave a general description of each document in question and asserted that each such document was immune from disclosure by reason of the attorney's work-product privilege and made a claim of the absolute portion of the privilege for some of the documents and the conditional portion of the privilege for the others. It would appear, therefore, that each document in question might fall into one of three categories: (1) as being immune from discovery by reason of the *absolute* portion of the privilege, (2) as

being immune from discovery by reason of the *conditional* portion of the privilege, or (3) as being nonwork product and not within the protection of the attorney's work-product privilege.

In order for the trial judge to rule on the claim of the attorney's work product privilege for each of the 64 documents, it is necessary for the court to make an *in camera* inspection of these documents. Such an *in camera* inspection will enable the court to determine (1) which documents, if any, do not fall within the concept of "work product" for this privilege (see Jefferson, Cal. Evidence Benchbook (1972) Meaning of "Work Product" for Attorney's Work-Product Privilege, § 41.2, pp. 709-712; 1978 Supp., § 41.2, pp. 482-483) and hence are subject to discovery; (2) which documents, if any, come within the "absolute" portion of the attorney's work-product privilege and are thus immune from discovery by defendants; and (3) which documents, if any, come within the "conditional" portion of the attorney's work-product privilege.

A document from Attorney Kottler's file comes within the "absolute" portion of the attorney's work-product privilege if it consists of a "writing that reflects an attorney's impressions, conclusions, opinions or legal research or theories." (Code Civ. Proc., § 2016, subd. (b).) Such a writing "shall not be discoverable under *any* circumstances." (*Ibid.*, italics added.) The language of section 2016, subdivision (b), is clear and explicit. It offers no opportunity for compromise or variation. There is no authorization for the court to weigh or balance any competing interests between the party seeking disclosure and the party resisting disclosure. Invocation of the attorney's work-product privilege with respect to such a document precludes discovery since such a document "is protected *absolutely* from disclosure by the attorney's work-product privilege. . . ." (*Rodriguez v. McDonnell Douglas Corp.* (1978) 87 Cal.App.3d 626, 648 [151 Cal.Rptr. 399].) (Italics in original.)

A document from Attorney Kottler's file comes within the "conditional" portion of the attorney's work-product privilege if the document meets the definition of "work product" for this privilege but is *not* a writing that reflects the attorney's impressions, conclusions, opinions, or legal research or theories. An attorney's "conditional" work product consists of material that is of a *derivative* or *interpretative* nature such as diagrams, charts, audit reports of books, papers, or records, and findings, opinions and reports of experts employed by an attorney to analyze evidentiary material. (See Jefferson, Cal. Evidence Benchbook

(1972) Meaning of "Work Product" for Attorney's Work-Product Privilege, § 41.2, pp. 709-712.)

"Material that is considered of a nonderivative or noninterpretative nature and that is evidentiary in character does *not* constitute the attorney's work product. This distinction between *derivative* and *nonderivative* matter strikes a reasonable balance between the competing policies of encouraging thorough trial preparation by lawyers, by making work product a privilege from disclosure and, at the same time, of permitting broad discovery to prevent trials from constituting games of chance." (*Id.* at p. 711.) (Italics in original.)

"Major categories of nonderivative evidentiary material excluded from the concept of an attorney's work product include (1) the identity or location of evidentiary matter, such as material objects; (2) material objects themselves that constitute admissible evidence; (3) information about prospective or potential witnesses, such as their names, phone numbers, addresses, and occupations; and (4) written or recorded statements of prospective witnesses." (*Id.* at p. 711.)

In the case at bench, if the trial court determines that certain documents from Attorney Kottler's file come within the conditional portion of the attorney's work-product privilege, it must then hold that such documents are protected by the privilege and are immune from disclosure to defendants unless the court determines that a denial of disclosure (1) will unfairly prejudice the defendants seeking disclosure in preparing their defense, or (2) will result in an injustice. In *Merritt v. Superior Court* (1970) 9 Cal.App.3d 721 [88 Cal.Rptr. 337], the court determined that an attorney's correspondence and discussions involved in the preparation of his client's actions came within the *conditional* portion of the attorney's work-product privilege and that, under the circumstances presented, a denial of disclosure to the adverse party seeking disclosure would result in an injustice to such adverse party. Hence, the claim of privilege was denied.

In *American Mut. Liab. Ins. Co. v. Superior Court* (1974) 38 Cal.App.3d 579 [113 Cal.Rptr. 561], a claim of the attorney's work-product privilege was asserted as to an attorney's file that contained research references, investigative and expert reports, comments by counsel on depositions and trial testimony and interviews with witnesses labelled as status reports. The trial court denied the claim of privilege without conducting an *in camera* inspection of the file. This was held to be error

since only an *in camera* inspection of the attorney's file would enable the trial judge to determine what documents, if any, came within the *absolute* portion of the attorney's work-product privilege, what documents, if any, came within the *conditional* portion of this privilege, and what documents, if any, were *not* work-product and clearly subject to disclosure.

In the case at bench, the trial court must use the *in camera* procedure to determine the validity of plaintiffs' claims of the attorney's work-product privilege in light of the views expressed herein.

Let a peremptory writ issue directing respondent court to vacate and set aside the subject order and proceed in accordance with the views expressed in this opinion.

Lillie, J., and Radin, J.,* concurred.

*Assigned by the Chairperson of the Judicial Council.