Filed 6/21/17

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| TUCKER ELLIS LLP,<br><br>      Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF CITY AND COUNTY OF SAN FRANCISCO,<br><br>      Respondent;<br><br>EVAN C. NELSON,<br><br>      Real Party in Interest. | A148956<br><br>(City and County of San Francisco Super. Ct. No. CGC-13-535453) |

In this writ proceeding, we are presented with a narrow question of law concerning the attorney work product privilege as codified in Code of Civil Procedure Section 2018.030.[1] Specifically, we are asked to determine, as between an employer law firm and a former attorney employee, who is the holder of the attorney work product privilege that attaches to documents created by the attorney employee during and in the scope of his employment? We conclude that under the circumstances of this case, the holder of the attorney work product privilege is the employer law firm, petitioner Tucker Ellis LLP (Tucker Ellis), and not the former attorney employee, real party in interest Evan C. Nelson (Nelson). As a corollary to our holding, we necessarily conclude that because

---

[1]    All further unspecified statutory references are to the Code of Civil Procedure. "In published opinions, the California courts have referred to attorney work product protections as a 'doctrine' [citation] and as a 'privilege' [citation]. Section 2018.080 refers to the 'work product privilege.' Whether attorney work product is protected under a 'doctrine' or a 'privilege,' it is clearly protected by statute." (*Meza v. H. Muehlstein & Co., Inc.* (2009) 176 Cal.App.4th 969, 981, fn. 4.)

1

Tucker Ellis is the holder of the attorney work product privilege, it had no legal duty to secure Nelson's permission before it disclosed to others documents he created during and in the scope of his employment. Because respondent court held to the contrary, finding that Tucker Ellis had a legal duty to take appropriate steps to ensure that the documents were not disclosed without Nelson's permission, we shall issue a peremptory writ of mandate directing respondent court to vacate its July 19, 2016, summary adjudication order, and enter a new order consistent with this decision.

## FACTUAL AND PROCEDURAL BACKGROUND

Nelson is a California attorney specializing in asbestos defense, and was employed by Tucker Ellis as a trial attorney in the firm's Mass Tort & Product Liability Practice Group in San Francisco beginning in November of 2007. In late 2009, Nelson was promoted to the position of "non-capital partner," a position he held until November of 2011, when he left Tucker Ellis to join a competing law firm in the same practice area.

When Nelson joined Tucker Ellis, he signed an employment agreement, stating that he "agree[d] to conform to the rules, regulations and policies of the Firm." During Nelson's employment, Tucker Ellis also provided employees with a Non-Partner Attorney Personnel Handbook, which stated, "[a]ll records and files maintained by Tucker Ellis & West LLP" were "the property of Tucker Ellis & West LLP," and "[a]ll documents, including email and voice mail, received, created or modified by any attorney are the property of Tucker Ellis & West LLP." The 2007 Tucker Ellis & West LLP Practice Policy Manual similarly provided that, "Firm provided Technology Systems are Firm property."

As part of his employment, Nelson worked with a group of scientific consulting experts at the Gradient Corporation (Gradient). Gradient was retained by Tucker Ellis to assist in litigation for a Tucker Ellis client. In 2008, Nelson exchanged a series of emails with Gradient consultants about medical research articles relating to smoking and/or radiation (rather than asbestos) as causes of mesothelioma (hereinafter also referred to as "attorney work product emails"). Around the same time, Tucker Ellis entered into an agreement with Gradient to research existing scientific studies on the causes of

2

mesothelioma, and summarize them in a published review article that was ultimately titled "*Ionizing radiation: a risk factor for mesothelioma*."

In September of 2011, while Nelson was still employed at Tucker Ellis, the law firm was contacted by counsel of record in *Durham v. General Electric Co., et al. (Durham)*, a litigation matter pending in Kentucky. *Durham* counsel advised that Tucker Ellis would be served with a subpoena seeking documents related to payments made by Tucker Ellis to Gradient to fund medical research articles and communications between Tucker Ellis and Gradient regarding such articles. Tucker Ellis's managing partner discussed the anticipated subpoena with Nelson, albeit the parties disagree about the contents of those conversations.

After Nelson left Tucker Ellis, the law firm was served with the anticipated subpoena issued in Ohio pursuant to an out-of-state commission in the *Durham* case. The subpoena sought, in pertinent part, the production of "[a]ny and all emails, letters or other communications between Tucker, Ellis & West LLP and Goodman, Gradient or Exponent regarding the research or publication" of "any literature or studies related to mesothelioma, asbestos or radiation-induced mesothelioma" funded by Tucker Ellis, including the noted published review article. Tucker Ellis reviewed the subpoena and withheld certain documents on the basis of attorney-client and the attorney work product privileges. Ultimately, Tucker Ellis produced the attorney work product emails authored by Nelson, which are the subject of this litigation. After Nelson was subpoenaed for deposition, he wrote a "clawback" letter to Tucker Ellis and *Durham* counsel, asserting the emails contained his privileged attorney work product and demanding they be sequestered and returned to him. Tucker Ellis did not respond to Nelson's letter.

Nelson filed this lawsuit against Tucker Ellis, alleging claims for negligence, negligent and intentional interference with contract, negligent and intentional interference with prospective economic advantage, intentional invasion of privacy, and conversion. Nelson asserted that as a result of Tucker Ellis's production of his emails, his attorney work product was made available on the internet and disseminated to over 50 asbestos plaintiffs' attorneys, interfering with his ability to work effectively with experts in the

3

asbestos field, and ultimately resulting in his termination from his new law firm and an inability to find new employment in his practice field.

Tucker Ellis moved to compel arbitration of Nelson's claims pursuant to an arbitration clause in Nelson's employment agreement. Respondent court denied the motion, concluding the arbitration clause was procedurally and substantively unconscionable under California law. Tucker Ellis appealed, and we affirmed. (*Nelson v. Tucker Ellis LLP* (December 15, 2014 A141121) 2014 Cal. App. Unpub. LEXIS 8971 (*Nelson I*).) In the course of discussing whether the arbitration clause was substantively unconscionable, we stated the following:

"Despite Tucker Ellis's arguments to the contrary, we conclude the nature of the right Nelson seeks to vindicate by his lawsuit is 'legally indistinguishable from the nature of the rights discussed in [*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83 and *Little v. Auto Stiegler, Inc.* (2003) 29 Cal.4th 1064].' [Citation.] The cause of action for an alleged intentional invasion of privacy through public disclosure of private information is tethered to both the constitutional right of privacy [citations] as recognized by the trial court, and the public policy articulated in Code of Civil Procedure sections 2018.020 and 2018.030 that writings, which reflect an attorney's impressions, conclusions, opinions, or legal research or theories, are not discoverable under any circumstances [citation]. Because Tucker Ellis could not ask Nelson to waive his attorney work product privilege as a condition of his employment, the law firm also 'cannot impose on the arbitration of [his] claim[ ] such burdens or procedural shortcomings as to preclude [its] vindication.' [Citation.]" (*Nelson I, supra*, at p. *16-17.)

Tucker Ellis then filed a special motion to strike the complaint as a strategic lawsuit against public participation pursuant to section 425.16 (the anti-SLAPP statute), and respondent court denied the motion. Tucker Ellis again appealed, and we affirmed. (*Nelson v. Tucker Ellis LLP* (November 24, 2015 A142731) 2015 Cal. App. Unpub. LEXIS 8561 (*Nelson II*).) In the course of discussing whether Tucker Ellis had

4

demonstrated that the challenged causes of action arose from protected activity, we stated the following:

"By his lawsuit, Nelson seeks relief based on an overarching claim that Tucker Ellis breached an independent legal duty it owed to Nelson regarding the nondisclosure of his privileged attorney work product. . . . And, as pertinent to our discussion, 'the custodian of materials protected by an evidentiary privilege owes a duty to the holder of the privilege to claim the privilege and to take actions necessary to ensure that the materials are not disclosed improperly.' [Citations.] [¶] Thus, contrary to Tucker Ellis's argument, the significance of the factual allegations relating to Tucker Ellis's response to a subpoena is to demonstrate that Tucker Ellis, as custodian of privileged attorney work product, breached a separate independent legal duty owed to Nelson 'to take appropriate steps to protect [his interest as] . . . the privilege holder[ ] in not disclosing the materials to . . . others.' (*People v. Superior Court (Laff)*[(2001) 25 Cal.4th 703,] 713.) 'This dispute, and not any protected activity, is "the gravamen or principal thrust" of the action. (*Martinez v. Metabolife Internat., Inc.* (2003) 113 Cal.App.4th 181, 193 [6 Cal.Rptr.3d 494].) The additional fact that protected activity [response to a subpoena] may lurk in the background—and may explain why the rift between the parties arose in the first place—does not transform [this action] into a SLAPP suit.' [Citations.]" (*Nelson II, supra*, at pp. *7-10, fn. omitted.) [2]

Following discovery, Nelson filed a motion for summary adjudication, seeking a determination that Tucker Ellis had a legal duty to protect his attorney work product from improper disclosure to third parties pursuant to section 2018.030. Tucker Ellis opposed

---

[2]     We do not agree with Nelson's suggestion that our decision in *Nelson II* establishes the law of the case as to whether Tucker Ellis did or did not owe a duty to Nelson concerning the release of certain documents allegedly containing attorney work product created by him while he was employed at Tucker Ellis. Our opinion in *Nelson II* merely describes Nelson's theory of liability for the limited purpose of determining whether the complaint was subject to dismissal under the anti-SLAPP statute. (See *Nelson II, supra,* at p.*11 ["[w]hether Nelson will be able to demonstrate that Tucker Ellis engaged in conduct for which he is entitled to relief is not before us and will be resolved in further proceedings"].)

5

the motion, arguing Nelson was not the holder of the attorney work product privilege under section 2018.030. Rather, Nelson's work product, created while an employee of the law firm, was owned by Tucker Ellis under Labor Code section 2860. As the owner of the work product created by Nelson, Tucker Ellis claimed it held the exclusive right to assert and waive the privilege afforded under section 2018.030, without Nelson's consent. Finding Labor Code section 2860 inapplicable, respondent court ruled, "Tucker Ellis LLP owed Plaintiff Evan C. Nelson a legal duty to take appropriate steps to ensure that work product created by Plaintiff which contains his impressions, conclusions and opinions and in [Tucker Ellis's] possession was not disclosed to others without Plaintiff's permission."

Tucker Ellis filed its petition for a writ of mandate in this court, challenging respondent court's summary adjudication ruling on the issue of duty. We requested informal briefing, and gave notice, pursuant to section 1088 and *Palma v. U.S. Industrial Fasteners, Inc*. (1984) 36 Cal.3d 171, 180, that, we might choose to act by issuing a peremptory writ in the first instance. After receipt of informal briefing, we temporarily stayed the trial in respondent court and issued an order to show cause, scheduling dates for the filing of a formal return and a formal traverse. Tucker Ellis filed a formal return and Nelson filed a formal traverse. We have reviewed the parties written pleadings, the record, and had the benefit of oral argument. For the reasons stated below, we now conclude Tucker Ellis is entitled to writ relief.

## DISCUSSION

## I.

### Appropriateness of Writ Relief

An order granting partial summary judgment—or summary adjudication—is not an appealable order. However, under certain circumstances, mandate may be granted to review an order granting summary adjudication. (See *Field Research Corp. v. Superior Court* (1969) 71 Cal.2d 110, 111; *Mason v. Superior Court* (1985) 163 Cal.App.3d 989, 994.) In particular, a writ of mandate may issue to prevent trial of non-actionable claims after an erroneous decision on a motion for summary adjudication. (See *Arnall v.*

6

*Superior Court* (2010) 190 Cal.App.4th 360, 364; *Travelers Casualty & Surety Co. v. Superior Court* (1998) 63 Cal.App.4th 1440, 1450.) Since a motion for summary adjudication "involves pure matters of law," we review the trial court's ruling de novo. (See *Addy v. Bliss & Glennon* (1996) 44 Cal.App.4th 205, 214; *Saldana v. Globe–Weis Systems Co.* (1991) 233 Cal.App.3d 1505, 1514.)

## II.

## Labor Code Section 2860 Does Not Determine Who is the Holder of Attorney Work Product Privilege Under Section 2018.030

Tucker Ellis asserts this dispute "boils down" to the issue of the ownership of Nelson's work product created while he was an employee of the law firm. According to Tucker Ellis, a finding that Nelson did not own the work product he created while employed by Tucker Ellis precludes any determination that the law firm owed him a duty of care. Therefore, the law firm was entitled to disclose Nelson's work product without his permission. In support of its claim it is the sole owner of the work product created by Nelson, Tucker Ellis relies on Labor Code section 2860, which provides: "Everything which an employee acquires by virtue of his employment, except the compensation which is due to him from his employer, belongs to the employer, whether acquired lawfully or unlawfully, or during or after the expiration of the term of his employment." (See *Lugosi v. Universal Pictures* (1979) 25 Cal.3d 813, 826-27 ["where an employee creates something as part of his duties under his employment, the thing created is the property of his employer"]; *Zahler v. Columbia Pictures Corp.* (1960) 180 Cal.App.2d 582, 589 [accord].) Tucker Ellis also argues that its claim of sole ownership is supported by several employment documents applicable to Nelson's employment. For example, the Tucker Ellis Non-Partner Attorney Personnel Handbook provides that "[a]ll records and files maintained by Tucker Ellis & West LLP" were "the property of Tucker Ellis & West LLP," that Nelson had no "reasonable expectation of privacy with respect to his" firm emails, and that "[a]ll documents, including email and voice mail, received, created or modified by any attorney are the property of Tucker Ellis & West LLP." The 2007

7

Tucker Ellis & West LLP Practice Policy Manual similarly provided that "Firm provided Technology Systems Are Firm property."

Our review of Labor Code 2860 and the cases construing the scope of that statute, as well as the employment agreement and other policies in effect during Nelson's employment, leads us to conclude that Tucker Ellis owned the documents in question. However, the dispositive issue here is who is the holder of the section 2018.030 attorney work product privilege, which attaches to and seeks to protect the information reflected in the documents in question. As we noted in considering Tucker Ellis's anti-SLAPP motion (*Nelson II*, *supra*, at pp. *8-9), an attorney can assert his work product privilege even though he is no longer in possession the document (see *OXY Resources California, LLC v. Superior Court* (2004) 115 Cal.App.4th 874, 901), and the contents of the documents may have been communicated to the client (see *BP Alaska Exploration, Inc. v. Superior Court* (1988) 199 Cal.App.3d 1240, 1260 (*BP Alaska Exploration*)). This is consistent with the policy to be served by the privilege: "The recognition of an attorney's right to assert a work product protection [even if the document is no longer in the attorney's possession] strengthens the attorney-client relationship by enabling the attorney to evaluate his client's case and to communicate his opinions to the client without fear that his opinions and his theories will thereafter be exposed to the opposing party or to the public in general for criticism and ridicule." (*Ibid*.) We therefore decline Tucker Ellis's invitation to find that ownership of the documents in question, standing alone, answers the question before us: whether the law firm or Nelson is the holder of the section 2018.030 attorney work product privilege under the circumstances we confront here. Nonetheless, as we now explain, we conclude Tucker Ellis is the holder of the section 2018.030 attorney work product privilege that attached to the documents created by Nelson during and in the scope of his employment. Because Tucker Ellis is the holder of the privilege, it necessarily follows that the law firm had no legal duty to secure Nelson's permission before disclosing the documents to others.

## III.

**Law Firm Employer is Holder of Section 2018.030 Attorney Work Product Privilege**

It is well settled that "[t]he meaning and construction of a statute is a question of law, which we decide independently. [Citation.] We are required to harmonize the various parts of the statutory enactment by considering the particular section in the context of the statutory framework as a whole. [Citation.] Ordinarily, the words of the statute provide the most reliable indication of legislative intent. [Citation.] However, a statute's literal terms will not be given effect if to do so would yield an unreasonable or mischievous result. [Citation.]" (*B.H. v. County of San Bernardino* (2015) 62 Cal.4th 168, 189.)

"California's civil work product privilege is codified in section 2018.030. Subdivision (a) provides absolute protection to any 'writing that reflects an attorney's impressions, conclusions, opinions, or legal research or theories.' (§ 2018.030, subd. (a).) Such a writing 'is not discoverable under any circumstances.' (*Ibid*.) The term 'writing' includes any form of recorded information, including [transmitting by electronic mail or facsimile, and any record thereby created, regardless of the manner in which the record has been stored]. (§ 2016.020, subd. (c) [adopting the definition set forth in Evid. Code, § 250].)" (*Coito v. Superior Court* (2012) 54 Cal.4th 480, 488 (*Coito*).) [3]

As explained by our Supreme Court, "[t]he idea that an attorney's work product should receive protection from discovery was first recognized by the United States

---

[3] As observed by one court, "the closest we can come to a 'workable' definition of work product under the statute is to say that it is 'the product of [the attorney's] effort, research and thought in the preparation of his client's case. It includes the results of *his own work and the work of those employed by him or for him by his client*, in investigating both the favorable and unfavorable aspects of the case, the information thus assembled, and the legal theories and plan of strategy developed by the attorney – all as reflected in interviews, statements, memoranda, *correspondence*, briefs, and any other writings reflecting the attorney's "impressions, conclusions, opinions, or legal research or theories," and in countless other tangible and intangible ways.' " (*BP Alaska Exploration, supra*, 199 Cal.App.3d at pp. 1253-1254, fn. 4, first italics added, second italics added by *BP Alaska Exploration*, quoting from McCoy, California Civil Discovery: Work Product of Attorneys (1966) 18 Stan. L. Rev. 783, 797.)

Supreme Court in *Hickman v. Taylor* (1947) 329 U.S. 495 . . . (*Hickman*). There, the defendant's counsel interviewed and took statements from the surviving crewmembers of a tugboat accident. (*Id*. at p. 498.) The plaintiff sought the production of any written or oral statements taken from the crewmembers. (*Id*. at pp. 498-499.) After concluding that the statements were not covered by the attorney-client privilege (*id*. at p. 508), the court nonetheless affirmed the denial of the plaintiff's request. The court explained that the plaintiff's request was 'simply an attempt, without purported necessity or justification, to secure written statements, private memoranda and personal recollections prepared or formed by an adverse party's counsel in the course of his legal duties.' (*Id*. at p. 510.) [¶] The court continued: 'In performing his various duties, . . . it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel. Proper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference. That is the historical and the necessary way in which lawyers act within the framework of our system of jurisprudence to promote justice and to protect their clients' interests. This work is reflected, of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways—aptly though roughly termed by the Circuit Court of Appeals in this case as the "work product of the lawyer." Were such materials open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten. An attorney's thoughts, heretofore inviolate, would not be his own. Inefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial. The effect on the legal profession would be demoralizing. And the interests of the clients and the cause of justice would be poorly served. ['] " (*Coito, supra*, 54 Cal.4th at pp. 489-490.)

In response to *Hickman*, and, later California cases interpreting *Hickman*, our Legislature codified an attorney work product privilege in section 2018.010 et seq. "[T]he current text is virtually identical to the version first enacted in 1963. Section

10

2018.020 declares: 'It is the policy of the state to do both of the following: [¶] (a) Preserve the rights of attorneys to prepare cases for trial with that degree of privacy necessary to encourage them to prepare their cases thoroughly and to investigate not only the favorable but the unfavorable aspects of those cases. [¶](b) Prevent attorneys from taking undue advantage of their adversary's industry and efforts.' Toward that end, section 2018.030 provides: '(a) A writing that reflects an attorney's impressions, conclusions, opinions, or legal research or theories is not discoverable under any circumstances. [¶] (b) The work product of an attorney, other than a writing described in subdivision (a), is not discoverable unless the court determines that denial of discovery will unfairly prejudice the party seeking discovery in preparing that party's claim or defense or will result in an injustice.' " (*Coito, supra*, 54 Cal.4th at pp. 493-494.) Thus, the attorney work product privilege "recognizes what is termed an 'absolute' privilege as to writings containing the attorney's impressions, opinions, legal research and theories and recognizes a 'qualified' privilege as to all written materials and oral information not reflecting the attorney's legal thoughts." (*Lasky, Haas, Cohler & Munter v. Superior Court* (1985) 172 Cal.App.3d 264, 271 (*Lasky*), citing to *Fellows v. Superior Court* (1980) 108 Cal.App.3d 55, 68 (*Fellows*), disapproved in part on another ground in *Coito, supra*, 54 Cal.4th at p.499.) [4]

Initially, we acknowledge, as do the parties, that the plain text of section 2018.030 does not answer the narrow question before us because the statute "is silent as to who is the holder of the privilege." (*Lasky, supra,* 172 Cal.App.3d at p. 271.) Nelson contends that cases interpreting section 2018.030 have construed it to mean that the attorney who created the work product is the holder of the privilege. (*Id.* at p. 278 [trustee's attorney

---

[4]      There are statutory exceptions to the attorney work product privilege but they are not at issue in this case. (See §§ 2018.050 [work product enabling commission of crimes not protected in official investigations], 2018.080 ["[i]n an action between an attorney and a client or a former client of the attorney, no work product privilege under this chapter exists if the work product is relevant to an issue of breach by the attorney of a duty to the client arising out of the attorney-client relationship"].)

"is the sole holder of the privilege and may effectively assert it even as against a client"]; see *Fellows, supra,* 108 Cal.App.3d at p. 64 [client in possession of attorney work product may assert privilege in attorney's absence]; *Lohman v. Superior Court* (1978) 81 Cal.App.3d 90, 101 [plaintiff could not invoke attorney work product privilege to suppress answers given by plaintiff's former attorney in deposition because attorney is holder of the privilege].) Nelson also draws support for his contention that he is the holder of the privilege from case law espousing that the Legislature's intent in enacting section 2018.030 was to protect the attorney who created the work product. (See *American Mut. Liab. Ins. Co. v. Superior Court* (1974) 38 Cal.App.3d 579, 594 ["the work product rule is designed to satisfy the *attorney's* requirement for privacy"]; *Kerns Constr. Co. v. Superior Court* (1968) 266 Cal.App.2d 405, 411 ["[i]f, as claimed, the reports were privileged under the work product rule, the privilege rested with the attorney"].) We have no quarrel with the case law cited by Nelson, but find that *Lasky* and cases similar to it, while helpful, are inapposite to the situation we confront here - whether the "attorney" who holds the privilege is the attorney employee who created the work product or his law firm employer. To resolve this ambiguity, we consider the statute's purpose, and the public policy to be served by the privilege. (See *Coalition of Concerned Communities, Inc. v. City of Los Angeles* (2004) 34 Cal.4th 733, 737.) Our analysis leads us to the view that interpreting the term "attorney," under section 2018.030, to mean Tucker Ellis, and not Nelson, is consistent with the statute's purpose and legislative intent, as well as the public policy to be served by the attorney work product privilege.

We note at the outset that the primary purpose of the privilege is to encourage attorneys to honestly and objectively evaluate cases by eliminating fear of compelled disclosure of the results of their efforts to those *outside* the attorney-client relationship. (See *Coito, supra,* 54 Cal.4th at p. 493, 495-496; *Lasky*, *supra*, 172 Cal.App.3d at p. 279; *Citizens for Ceres v. Superior Court* (2013) 217 Cal.App.4th 889, 920 ["purpose of the attorney work product privilege is to allow attorneys to advise and prepare without risk of revealing their strategies to the other side or of giving the other side the benefit of their

12

efforts"].)  In this case, Gradient, a consultant, entered into a retention agreement with Tucker Ellis, not Nelson, in order to assist in litigation for a client of Tucker Ellis.  The documents in question, which were exchanged between Gradient and Nelson, were created while Nelson was acting in his capacity as an employee of Tucker Ellis.  Under these circumstances, we conclude "the attorney" entitled to invoke the attorney work product privilege is Tucker Ellis, not Nelson.

*People ex rel. Lockyer v. Superior Court* (2000) 83 Cal.App.4th 387 (*Lockyer*)[5] supports our conclusion that in this case Tucker Ellis is the holder of the attorney work product privilege.  In *Lockyer*, the court was asked to consider the question of the holder of the attorney work product privilege as between Longanbach, a former deputy district attorney (DDA) and the district attorney (DA).  (*Id.* at p. 398.)  Longanbach was under criminal investigation for perjury and misappropriation of government property arising out of his former employment with the DA.  (*Id.* at p. 393.)  The California Department of Justice (DOJ) obtained a search warrant for the office formerly occupied by Longanbach and seized certain writings authored by him.  (*Id.* at pp. 393-394.)  The trial court upheld Longanbach's claim of attorney-client privilege and attorney work product privilege over the documents and the DOJ sought writ relief.  (*Id.* at p. 395.)  While acknowledging that "a public entity, similar to a corporation, has a right to assert the attorney-client privilege," the *Lockyer* court found "the right of an individual public prosecutor to do so is limited due to the nature of his or her position."  (*Id.* at p. 398.)  The court analogized the deputy district attorney to an individual officer or employee of a corporation, and noted that " '[w]here the employee's connection with the matter grows out of his employment to the extent that his report or statement is required in the ordinary course of the corporation's business, the [deputy district attorney] is no longer an independent witness, and his [or her] statement or report is that of the [DA] employer.' " (*Lockyer*, *supra*, 83 Cal.App.4th at pp. 398-399, quoting *D.I. Chadbourne, Inc. v.*

---

[5]     *Lockyer* was disapproved on other grounds in *People v. Superior Court (Laff),* *supra,* 25 Cal.4th at p. 719, footnote 5.

*Superior Court* (1964) 60 Cal.2d 723, 737.)  The *Lockyer* court concluded that "depending upon the circumstances, any possible claims of attorney-client privilege, *work product protection* or privacy regarding documents or statements prepared by a prosecuting attorney, such as DDA Longanbach, made in the course of his employment with the DA, would belong to the DA and not the individual DDA." (*Id*. at pp. 399, 400; italics added.)

Nelson challenges our reliance on *Lockyer*, arguing that the *Lockyer* court relied on the concept that a district attorney is not an "attorney" who represents clients as such, and, the decision is otherwise distinguishable because attorney work product in the criminal context is governed by Penal Code section 1054.6, not section 2018.030.  We are not persuaded.  The *Lockyer* court's analysis of who could assert the privilege as between a former deputy district attorney and the district attorney did not turn on its observation that the district attorney does not have "clients" in the traditional sense.  To the contrary, the court considered that the relationship between the deputy district attorney and the district attorney was similar to that of corporate employee and corporate employer.  (*Id*. at pp. 398-399.)  Nor did the *Lockyer* court's conclusion depend on any distinction between civil and criminal discovery. The *Lockyer* court merely observed that "confidentiality regarding the fruits of investigations of a public prosecutor are governed exclusively by Evidence Code section 1040, which controls the assertion of claims for governmental privilege for official information," and requires a balancing of the necessity of preserving confidentiality against the interests in disclosure.  (*Lockyer*, *supra*, 83 Cal.App.4th at p. 399; see *Shepherd v. Superior Court* (1976) 17 Cal.3d 107, 122-123, overruled in part on another ground in *People v. Holloway* (2004) 33 Cal.4th 96, 131).  However, Penal Code section 1054.6, which governs attorney work product in the criminal context, explicitly defines attorney work product by reference to section 2018.030.  Specifically, the Penal Code reads: "Neither the defendant nor the prosecuting attorney is required to disclose any materials or information which are work product as defined in subdivision (a) of Section 2018.030 of the Code of Civil Procedure." (Pen. Code, § 1054.6; see *Lockyer*, *supra*, at pp. 397-398 & fn. 8.)

14

Our conclusion that Tucker Ellis is the holder of the attorney work product privilege under the circumstances of this case is further buttressed when we consider the anomalous results that would potentially flow were we to adopt Nelson's position. Concededly, this case involves law firm documents created by a single employee attorney for a client of the employer law firm. But, as Tucker Ellis notes, many law firm documents will reflect the work product of multiple current and former attorneys, potentially practicing in multiple jurisdictions. Securing permission from these attorneys to disclose their work product, and resolving conflicts among them when they do not agree about whether certain information constitutes work product or who was involved in creating it, will be a burdensome and complicated task for a law firm required to comply with requests for disclosure while preserving the privilege. In addition, to the extent this task involves former attorneys who created work product for current firm clients, as here, the purpose of the attorney work product privilege will be better served by allowing the firm itself - with current knowledge of ongoing litigation and client issues and in the context of the firm's on-going attorney-client relationships - to speak with one voice regarding the assertion of the privilege. By declining to extend the scope of the attorney work product privilege to include Nelson in this case we also avoid undue intrusion into the equally sacrosanct duty of a law firm to zealously represent the interests of its clients with undivided loyalty. As our high court has aptly explained: "Attorneys have a duty to maintain undivided loyalty to their clients to avoid undermining public confidence in the legal profession and the judicial process. [Citations.] The effective functioning of the fiduciary relationship between attorney and client depends on the client's trust and confidence in counsel. [Citation.] The courts will protect clients' legitimate expectations of loyalty to preserve this essential basis for trust and security in the attorney-client relationship." (*People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.* (1999) 20 Cal.4th 1135, 1146-1147.)

We conclude by again emphasizing the narrowness of our holding. We hold only that, under California law and on the record before us, Tucker Ellis is the holder of the section 2018.030 attorney work product privilege that attached to documents created by

Nelson during and in the scope of his employment.  As the holder of the attorney work product privilege, Tucker Ellis had no legal duty to secure Nelson's permission before disclosing the documents to others. [6]

## DISPOSITION

Let a preemptory writ of mandate issue directing respondent court to vacate its July 19, 2016, summary adjudication order, and enter a new order consistent with this decision.  This decision will become final as to this court after it is filed.  (Cal. Rules of Court, rule 8.490(b)(2)(A).)  Upon finality of this decision, the temporary stay order issued by this court on September 23, 2016 is vacated.  Costs in this original proceeding are awarded to petitioner Tucker Ellis LLP.  (Cal. Rules of Court, rule 8.493(1)(A).)

_____
Jenkins, J.


We concur:


_____
McGuiness, P. J.


_____
Pollak, J.


*Tucker Ellis LLP v. Superior Court of City and County of San Francisco, and Evan C. Nelson*, A148956

_____

[6]    Nelson also sought summary adjudication of 18 other issues, but he withdrew his request as to those issues in respondent court.  Respondent court also noted it was not ruling on issues of Nelson's waiver or assignment of the attorney work product privilege, whether any of the documents in question actually qualified as attorney work product, or whether California or Ohio law applies.  Accordingly, our decision should not be read and we express no opinion on those issues.

Trial Court: City and County of San Francisco, Superior Court

Trial Judge: Hon. Harold E. Kahn, Judge

Counsel for Petitioner:         GREENBERG TRAURIG LLP
Tucker Ellis LLP,               Scott D. Bertzky, William Goines,
                               Karen Rosenthal, Cindy Hamilton

Counsel for Real Party in Interest:    KELLER SLOAN, ROMAN & HOLLAND LLP
Evan C. Nelson                 Thomas H. Sloan, Jr.
                               Evan C. Nelson