Filed 3/24/21

# CERTIFIED FOR PUBLICATION

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# SECOND APPELLATE DISTRICT

# DIVISION SEVEN

| | |
|---|---|
| ROBERT A. CURTIS, | B292967 |
| Petitioner, | (Los Angeles County Super. Ct. No. BC664688) |
| v. | |
| THE SUPERIOR COURT OF LOS ANGELES COUNTY, | |
| Respondent; | |
| CALIFORNIA EMPLOYMENT LAWYERS ASSOCIATION, | |
| Real Party in Interest. | |

ORIGINAL PROCEEDINGS in mandate.  Holly J. Fujie, Judge.  Appeal dismissed.  Writ petition denied.

Foley Bezek Behle & Curtis, Thomas G. Foley, Jr., Aaron L. Arndt and J. Paul Gignac for Petitioner.

Alexander Krakow + Glick, Alexander Morrison + Fehr, J. Bernard Alexander, III, and Tracy L. Fehr; The deRubertis Law Firm and David M. deRubertis for Real Party in Interest.

_____

Robert A. Curtis, an attorney and third-party witness in the underlying action, appeals from an order granting the motion of the California Employment Lawyers Association (CELA) to compel Curtis to provide deposition testimony identifying a nontestifying expert whom Curtis consulted in prior litigation.  In the underlying action, CELA alleges an unknown CELA member (Doe 1) sent Curtis, a non-member, information received from a members-only email distribution list in violation of a confidentiality agreement.  Curtis then disclosed the confidential information from Doe 1 to his client, and the information was filed in opposition to a motion for attorneys' fees filed in the prior action.  Curtis contends the trial court abused its discretion in compelling him to testify because the identity of Doe 1—as a nontestifying expert—is entitled to both absolute and qualified attorney work product protection.

The identity of Curtis's nontestifying expert is not entitled to absolute work product protection because it is not "a writing" that would reveal Curtis's "impressions, conclusions, opinions, or legal research or theories."  (Code Civ. Proc., § 2018.030, subd. (a).)[1]  However, if an attorney can show that disclosure of the identity of a nontestifying expert would result in opposing

_____

[1]     All further undesignated statutory references are to the Code of Civil Procedure.

counsel taking undue advantage of the attorney's industry or efforts or impair the attorney's ability to prepare and investigate a case, the identity may be entitled to protection under the qualified work product privilege.  In that case, the identity is only discoverable if the party seeking discovery can establish that "denial of discovery will unfairly prejudice the party seeking discovery in preparing that party's claim or defense or will result in an injustice."  (§ 2018.030, subd. (b).)

The identity of Doe 1 is entitled to at most qualified attorney work product protection, and the trial court did not abuse its discretion in finding CELA met its burden to demonstrate denial of disclosure would unfairly prejudice CELA in prosecuting the action and only minimally disadvantage Curtis.  We agree with CELA that Curtis has appealed from a nonappealable discovery order, but we treat Curtis's appeal as a petition for writ of mandate.  We dismiss the appeal and deny the petition.

## FACTUAL AND PROCEDURAL BACKGROUND

A.     *The Saccio Action and Curtis's Consultation with Doe 1[2]*
Curtis is a named partner at the law firm Foley Bezek Behle & Curtis, LLP (FBBC), which has represented Santa Barbara businessman Antonio Romasanta in a variety of legal matters for more than 30 years.  In November 2016 Charles Saccio, an employee at a hotel owned and operated by Romasanta, filed an age discrimination lawsuit against

---

[2]     The factual background is taken from the evidence submitted by the parties in connection with CELA's motion to compel.

3

Romasanta in the Santa Barbara County Superior Court (*Saccio v. Romasanta et al.* (Super. Ct. S.B. County, No. 15CV00672) (the *Saccio* action)). Although Romasanta retained a different law firm as his trial counsel in the *Saccio* action, he also retained Curtis to assist with trial preparation, trial strategy, and posttrial motions.

Curtis does not specialize in employment law, so when employment issues arise for his business clients, Curtis routinely consults with nontestifying experts to advise him on employment law, help him investigate and prepare a legal strategy, and provide a plaintiff's perspective. Curtis does not have the experts testify at trial or prepare a written report.

In the *Saccio* action, Curtis contacted Doe 1 a few weeks before opening statements and starting using Doe 1 as a nontestifying expert.[3] Doe 1 is an attorney who specializes in representation of plaintiffs in employment law matters. Over the course of the trial, Curtis consulted Doe 1 on multiple occasions. After the jury rendered a verdict in favor of Saccio, Curtis continued to use Doe 1 to evaluate potential weaknesses in the evidence relied on by Saccio's attorney in connection with Romasanta's motions for judgment notwithstanding the verdict and for a new trial. After Romasanta's posttrial motions were denied, Doe 1 assisted Curtis in developing strategies for opposing Saccio's motion for attorneys' fees.

---

[3] Curtis testified in his deposition there was no document confirming his consulting agreement with Doe 1; Doe 1 did not provide a bill for his services; and Curtis had not seen a record of any checks paid to Doe 1. However, Curtis testified Doe 1 was paid for his services.

B.    *The Secrest Posting on the CELA Listserv*

CELA is a nonprofit corporation "dedicated to advancing and protecting the interest of California workers and assisting the attorneys who represent employees in various matters," and it offers members access to online depositories and email "Listservs" that members use to exchange ideas and strategies. On November 22, 2016, the day the jury returned a verdict in the *Saccio* action, Saccio's lead trial attorney, David Secrest, posted a message describing his victory on CELA's online Listserv called "CELA Employment Law Discussion." Secrest's posting, which was available to 1,300 CELA members, was entitled "Small Victories: Discrimination/Harassment verdict," and it provided a colorful account of the strategies and factors Secrest believed had contributed to a $400,000 jury verdict for Saccio.

Doe 1, who is alleged to be a member of CELA,[4] forwarded an email containing Secrest's posting to Curtis. Curtis and the other attorneys at FBBC are not members of CELA.[5] Curtis in turn forwarded the email containing the Secrest posting to Romasanta, and the email was filed as an exhibit in support of Romasanta's opposition to Saccio's motion for attorneys' fees. Saccio moved to strike the Secrest posting on the grounds it contained attorney work product and attorney-client privileged matter. CELA filed an amicus curiae brief supporting Saccio's

---

[4]    Curtis testified in his deposition, "I believe [Doe 1] is a member of CELA, but I don't know that for a fact. I just know he's a plaintiff's side employment attorney."

[5]    Curtis attested in his declaration opposing CELA's motion to compel that he was unaware a CELA Listserv existed at the time he received the Secrest posting.

5

position. The trial court in the *Saccio* action[6] denied the motion to strike, ruling Secrest waived any privilege in his trial summary by sharing it widely on CELA's Listserv. On May 5, 2017 the court awarded Saccio attorneys' fees. Romasanta passed away shortly after the conclusion of the *Saccio* action.

C.     *CELA's Lawsuit and Motion To Compel*

On June 9, 2017 CELA filed the underlying action in the Los Angeles County Superior Court. CELA's complaint alleged causes of action for breach of contract and injunctive relief against five Doe defendants who were members of CELA. CELA alleged that its members are required to enter a written joint prosecution and confidentiality agreement to receive access to its confidential materials, including information on its Listserv. CELA alleged further on information and belief, "[O]n or about November 22, 2016, [Doe] 1 forwarded CELA [c]onfidential [m]aterial to a third party, a non-CELA member [recipient], in violation of the conditions of the CELA [c]onfidentiality [a]greement. This lawsuit seeks to determine the identity of [Doe] 1 and any other violators of the CELA contractual agreement related to this disclosure, in order to seek monetary and injunctive relief consistent with the CELA [c]onfidentiality [a]greement." The complaint alleged Does 1 through 5 "must by necessity be identified by way of discovery."

On September 25, 2017 CELA subpoenaed Kathryn Romasanta-Eckert, the executor of Romasanta's estate, to obtain unredacted copies of communications relating to Romasanta's receipt of the Secrest posting and information identifying the

---

[6]     Santa Barbara County Superior Court Judge Donna D. Geck.

6

source of the posting. Romasanta-Eckert moved to quash the subpoena, asserting the requested information "relate[d] directly to communications and advice between Antonio Romasanta and his attorneys" and was protected by the attorney-client privilege. The trial court[7] denied the motion, holding that although the contents of communications between Romasanta and his attorney were privileged, "other identifying information concerning the communication, such as the name of the attorney, the date of the communication, and . . . the lawyer's email address would not be privileged." In compliance with the court's order, Romasanta-Eckert provided the email which had been sent to Romasanta. The email identified Curtis as the attorney who forwarded the Secrest posting, but it did not identify Doe 1.

CELA's counsel deposed Curtis on April 18, 2018 and asked him to identify Doe 1. Curtis timely served objections in advance of the deposition, and at the deposition Curtis's attorney instructed Curtis not to answer questions asking him to disclose the identity of Doe 1, asserting the attorney work product privilege. CELA ultimately suspended the deposition so the parties could resolve the issue of Doe 1's identification by written motion.

On June 25, 2018 CELA filed a motion to compel Curtis's deposition testimony, arguing the identity of Doe 1 was entitled only to qualified work product protection because CELA was not seeking any attorney "impressions, conclusions, opinions, or legal research or theories" (§ 2018.030, subd. (a)), and the identity of Doe 1 would not convey "tactical information" respecting the *Saccio* action. CELA further argued it would be unable to determine the identity of Doe 1 without Curtis's testimony.

---

[7]     Judge Michael Johnson.

7

CELA's counsel averred in a supporting declaration, "[CELA] has attempted to use internal measures, such as its [i]nformation [t]echnology consultants and an internal investigation in order to determine the identity of [Doe 1], the individual who retrieved the Secrest [e-]mail and forwarded it to Mr. Curtis. Based on the tools available to CELA, it does not have the ability to ascertain the identity of [Doe 1], other than by way of obtaining disclosure."

In his opposition to the motion to compel, Curtis argued the identity of Doe 1 was entitled to absolute work product protection because disclosure of Doe 1's identity would convey tactical information in that it would reveal Curtis's strategy of using a plaintiff's-side employment lawyer as a nontestifying consultant "and could result in [Curtis] being unable to use [Doe 1's] services in the future." CELA's members would be able to gain a tactical advantage against Curtis in future employment law matters by engineering retention conflicts. Curtis also asserted that even if the identity of Doe 1 were entitled only to qualified protection, a balancing of CELA's interest in disclosure against the salutary purposes of work product protection weighed against disclosure. Curtis would be hampered in his ability to prepare future cases using Doe 1, and consultants would be discouraged from working with attorneys for fear that a later unmasking would harm their reputation and business.

After a hearing, on September 24, 2018 the trial court[8] granted CELA's motion to compel. The court concluded Doe 1's identity was not subject to attorney work product protection because Doe 1 was a fact witness. The court explained, "[Doe 1] was only a consulting expert for purposes of the *Saccio* action.

---

[8]     The case was reassigned to Judge Holly Fujie on February 14, 2018.

For purposes of this action, CELA is not interested in what Curtis may have learned from the individual as part of his research or preparation for the [*Saccio*] case. CELA seeks only to question the individual about an event he witnessed (or potentially was responsible for), namely the removal of an email from the confidential ListServ, and its distribution to non-CELA members. [¶] . . . [¶] . . . [T]he identity of a fact witness is not subject to any work product protection, even if that witness was retained as a nontestifying consultant in an unrelated lawsuit." The court also held that even if Doe 1 were characterized as a nontestifying expert rather than a fact witness, Doe 1's identity would be subject at most to qualified work product protection, and because CELA demonstrated it had no other means to identify Doe 1, CELA met its burden of demonstrating prejudice to overcome the qualified privilege.

Curtis timely appealed. His notice of appeal states, "Because Mr. Curtis is a non-party, and this order resolves all issues between Mr. Curtis and [CELA], this order is appealable under the collateral order doctrine. As a non-party, Mr. Curtis will be unable to appeal from the final judgment in the underlying litigation."

## DISCUSSION

A. *We Review Curtis's Appeal from the Order Compelling Disclosure as a Writ Petition*

In its respondent's brief, CELA contends the trial court's order granting CELA's motion to compel is not immediately appealable because the action is still pending below and there has been no final judgment. Curtis contends the discovery order

9

is immediately appealable under the collateral order doctrine or under an exception to the nonappealability of discovery orders, or alternatively, we should treat his appeal as a writ petition. In light of the unusual circumstances, we treat Curtis's appeal as a writ petition pursuant to *Olson v. Cory* (1983) 35 Cal.3d 390, 401 (*Olson*).

"The right to appeal is wholly statutory. [Citation.] . . . [S]ection 904.1 lists appealable judgments and orders. Chief among them is a 'judgment' that is not interlocutory, e.g., a final judgment. A judgment is the final determination of the rights of the parties (Code Civ. Proc., § 577) ""when it terminates the litigation between the parties on the merits of the case and leaves nothing to be done but to enforce by execution what has been determined.""" (*Dana Point Safe Harbor Collective v. Superior Court* (2010) 51 Cal.4th 1, 5 (*Dana Point*), fn. omitted; accord, *Finance Holding Co., LLC v. Molina* (2018) 29 Cal.App.5th 663, 673.) ""It is not the form of the decree but the substance and effect of the adjudication which is determinative. As a general test, which must be adapted to the particular circumstances of the individual case, it may be said that *where no issue is left for future consideration except the fact of compliance or noncompliance with the terms of the first decree, that decree is final*, but where anything further in the nature of judicial action on the part of the court is essential to a final determination of the rights of the parties, the decree is interlocutory.""" (*Dana Point*, at p. 5.)

CELA is correct that "[g]enerally, discovery orders are not appealable." (*H.B. Fuller Co. v. Doe* (2007) 151 Cal.App.4th 879, 885 (*H.B. Fuller*); accord, *Warford v. Medeiros* (1984) 160 Cal.App.3d 1035, 1040 (*Warford*).) "The rationale for this

10

rule is that in the great majority of cases the delay due to interim review is likely to result in harm to the judicial process by reason of protracted delay [citations] and discovery orders may be reviewed on appeal from a final judgment on the merits." (*Warford*, at p. 1041.)  However, appellate courts have recognized an exception to this general rule for discovery orders issued in California requiring production of information to be used in an action pending in another jurisdiction, which orders the courts have found are final and appealable.  (See *Adams v. Woods* (1861) 18 Cal. 30, 31 (*Adams*) ["[s]uch an intervention, involving new and distinct rights, and being limited and spent by the final order, can scarcely be considered as merely interlocutory"]; *H.B. Fuller,* at p. 885 [where plaintiff litigating in Minnesota against an unknown former employee who allegedly posted confidential information online served a California subpoena to compel an Internet service provider to identify the defendant, the denial of the Internet service provider's motion to quash was an appealable final order]; *Warford*, at p. 1041 ["we think an exception to the general rule exists where, as here, no final review of the underlying action will take place in a California forum"].)

Courts have also treated collateral orders as appealable, holding that "'[w]here the trial court's ruling on a collateral issue "is substantially the same as a final judgment in an independent proceeding" [citation], in that it leaves the court no further action to take on "a matter which . . . is severable from the general subject of the litigation" [citation], an appeal will lie from that collateral order even though other matters in the case remain to be determined.'"  (*In re Marriage of Grimes & Mou* (2020) 45 Cal.App.5th 406, 418; accord, *Muller v. Fresno Community*

11

*Hospital & Medical Center* (2009) 172 Cal.App.4th 887, 898 (*Muller*) [""A necessary exception to the one final judgment rule is recognized where there is a final determination of some collateral matter distinct and severable from the general subject of the litigation. If, e.g., this determination requires the aggrieved party immediately to pay money or perform some other act, he is entitled to appeal even though litigation of the main issues continues.""].)

In some respects, the order compelling Curtis to identify Doe 1 is analogous to the out-of-state discovery orders addressed in *Adams*, *H.B. Fuller*, and *Warford* and the collateral order doctrine. Curtis is a third party to CELA's action, and the trial court's order compelling him to identify Doe 1 "leave[s] nothing to the party against whom judgment is rendered except to comply." (*Dana Point, supra*, 51 Cal.4th at p. 11.) Curtis testified he is not a member of CELA and had no prior knowledge of the CELA Listserv. Thus, he is unlikely to become a party to this action, and he has already submitted to a deposition at which he testified as to his knowledge of the relevant facts except for identification of Doe 1 (although Curtis may be the subject of future discovery requests once he discloses the identity of his expert witness). As a nonparty, he will not have a right to obtain review of the discovery order at any later time in the proceeding (for example, postjudgment). Absent review of the discovery order, Curtis will be in the unenviable position of having to comply with an order he contends would require disclosure of privileged information or potentially facing contempt for his failure to comply.

But unlike the out-of-state discovery orders for which there was no pending action in California, the discovery order here is

directly related to the pending lawsuit in California in which CELA is a party. Likewise, in contrast to cases applying the collateral order doctrine, the discovery order here is not collateral to the pending action. (See, e.g., *Muller v. Fresno Community Hospital & Medical Center, supra*, 172 Cal.App.4th at pp. 904-905 [order sanctioning defendants for alleged misconduct during second trial appealable as collateral order where order would likely not be reviewable after third trial, if any]; *Apex LLC v. Korusfood.com* (2013) 222 Cal.App.4th 1010, 1016 [order awarding appellate attorneys' fees in prior appeal reviewable as collateral order because it was "'distinct and severable' from the subject matter of the underlying litigation"].) The trial court's order staying the underlying action pending resolution of Curtis's appeal underscores the centrality of the discovery issue to the underlying action.

We therefore dismiss the appeal. However, in light of the unusual circumstances present here, we opt to treat the appeal as a petition for writ of mandate. (See *Olson, supra*, 35 Cal.3d at p. 401 [courts have the "power to treat the purported appeal as a petition for writ of mandate," but the power "should not [be] exercise[d] . . . except under unusual circumstances"]; *Williams v. Impax Laboratories, Inc.* (2019) 41 Cal.App.5th 1060, 1071-1072 ["'An appellate court has discretion to treat a purported appeal from a nonappealable order as a petition for writ of mandate, but that power should be exercised only in unusual circumstances.'"].)

The *Olson* court considered five factors in holding it was appropriate to treat the appeal as a petition for a writ: Whether "(1) requiring the parties to wait for a final judgment might lead to unnecessary trial proceedings; (2) the briefs and record included, in substance, the necessary elements for a proceeding

13

for a writ of mandate; (3) there was no indication the trial court would appear as a party in a writ proceeding; (4) the appealability of the order was not clear; and (5) the parties urged the court to decide the issues rather than dismiss the appeal." (*Hall v. Superior Court* (2016) 3 Cal.App.5th 792, 807 [applying *Olson* factors in treating as a petition for writ of mandate an appeal from an order denying a petition challenging the determination by the Department of Motor Vehicles that petitioner's license was properly revoked but remanding for a new hearing because the hearing officer had been found guilty of accepting a bribe in another matter]; accord, *Turman v. Superior Court* (2017) 17 Cal.App.5th 969, 979 [treating as petition for writ of mandate an appeal from an order finding only one of three defendants was an employer for purposes of wage and hour claims and partially denying class certification]; *City of Los Angeles v. Superior Court* (2015) 234 Cal.App.4th 275, 280-281 [treating as petition for writ of mandate an appeal from an order reversing hearing officer's decision that tenant did not qualify as "handicapped" for purposes of receiving greater amount of relocation assistance but remanding for hearing officer to conduct new hearing, because the appeal "presents a question of public importance, the parties have fully briefed the propriety of the trial court's ruling, and both parties desire a resolution of the merits of the appeal"].)

As the Supreme Court explained in *Olson* in treating as a petition for writ of mandate an appeal from an interlocutory order under section 437c determining plaintiffs were not entitled to recover interest on retroactive salary and pension payments, "To require the parties to wait for resolution of plaintiffs' interest claim until disposition of all matters yet to be resolved by the

14

trial court might lead to unnecessary trial proceedings since, for example, the award of attorney fees might well be influenced by final determination of the interest claim. Thus the record sufficiently demonstrates the lack of adequate remedy at law necessary for issuance of the writ." (*Olson, supra*, 35 Cal.3d at pp. 400-401.)

Here, the trial court's order requiring Curtis to disclose the name of his expert witness may never be appealable. If Curtis discloses the name, appeal of the court's discovery order will become moot. If Curtis refuses to disclose the name of his expert, CELA's only option to avoid dismissal of the case (assuming it cannot otherwise discover the identity of the Doe defendants) would be to seek to hold Curtis in contempt. Although a contempt order is reviewable by a petition for extraordinary writ (*People v. Gonzalez* (1996) 12 Cal.4th 804, 816; *In re M.R.* (2013) 220 Cal.App.4th 49, 64-65), it would be unfair to subject Curtis to possible contempt without the ability to adjudicate whether his claim of privilege is meritorious. The lack of an adequate remedy at law for Curtis supports our consideration of Curtis's appeal as a petition for writ of mandate.[9]

Curtis should have more appropriately sought relief in the first instance by filing a petition for writ of mandate to protect his claim of privilege. (See *O'Grady v. Superior Court* (2006) 139 Cal.App.4th 1423, 1431-1432 [issuing writ of mandate directing trial court to grant third party's motion for protective

---

[9] In its respondent's brief, CELA argues there is no urgency for us to review Curtis's claim of privilege because he could simply disclose his expert's name, then let the expert seek a remedy for the disclosure. But this alternative would not address Curtis's right to claim the identity of his expert is privileged.

order to prevent disclosure of information on Web sites]; *Rancho Publications v. Superior Court* (1999) 68 Cal.App.4th 1538, 1542, 1552 [issuing writ of mandate ordering trial court to grant motion to quash filed by third party publisher of newspaper with respect to subpoena seeking disclosure of documents that would reveal identity of anonymous authors of newspaper advertisements]; see also *Costco Wholesale Corp. v. Superior Court* (2009) 47 Cal.4th 725, 741 [extraordinary writ relief appropriate to review order granting discovery over party's claim of attorney-client privilege]; *Bank of America, N.A. v. Superior Court* (2013) 212 Cal.App.4th 1076, 1101-1102 [review of discovery order appropriate where petitioning party claimed privilege against disclosure]; *KSDO v. Superior Court* (1982) 136 Cal.App.3d 375, 386 [issuing writ of mandate directing trial court to vacate order requiring defendant reporter to produce his investigation notes].)  But, as in *Olson*, this matter is fully briefed and contains the necessary elements for a proceeding for a writ of mandate, and there is no indication the trial court would elect to appear in a writ proceeding.  It would serve no purpose at this point to require Curtis to file a writ petition and have the parties submit the identical briefing on the petition.

B.    *Standard of Review*
        "A trial court's determination of a motion to compel discovery is reviewed for an abuse of discretion."  (*Costco Wholesale Corp. v. Superior Court* (2009) 47 Cal.4th 725, 733; *Williams v. Superior Court* (2017) 3 Cal.5th 531, 540 ["We review a trial court's grant or denial of a motion to compel discovery for an abuse of discretion."]; see *City of Los Angeles v. Superior Court* (2017) 9 Cal.App.5th 272, 282 ["Generally, '[t]he standard of

16

review for a discovery order is abuse of discretion, because management of discovery lies within the sound discretion of the trial court."] "'A reviewing court generally will not substitute its opinion for that of the trial court and will not set aside the trial court's decision unless "there was 'no legal justification' for the order granting or denying the discovery in question."'" (*Pirjada v. Superior Court* (2011) 201 Cal.App.4th 1074, 1085; accord, *Krinsky v. Doe 6* (2008) 159 Cal.App.4th 1154, 1161.) "An order that implicitly or explicitly rests on an erroneous reading of the law necessarily is an abuse of discretion." (*Williams*, at p. 540; accord, *Property Reserve, Inc. v. Superior Court* (2016) 6 Cal.App.5th 1007, 1018.)

C.      *Attorney Work Product Privilege*

"In California, an attorney's work product is protected by statute. (Code Civ. Proc., § 2018.010 et seq.)." (*Coito v. Superior Court* (2012) 54 Cal.4th 480, 485 (*Coito*).) Section 2018.030, subdivision (a), provides for an absolute protection from disclosure: "A writing that reflects an attorney's impressions, conclusions, opinions, or legal research or theories is not discoverable under any circumstances." By contrast, section 2018.030, subdivision (b), provides for a qualified protection from disclosure: "The work product of an attorney, other than a writing described in subdivision (a), is not discoverable unless the court determines that denial of discovery will unfairly prejudice the party seeking discovery in preparing that party's claim or defense or will result in an injustice." (See *Coito*, at p. 488; *Lasky, Haas, Cohler & Munter v. Superior Court* (1985) 172 Cal.App.3d 264, 271 (*Lasky*) [work product privilege "recognizes what is termed an 'absolute' privilege as to *writings*

17

containing the attorney's impressions, opinions, legal research and theories and recognizes a 'qualified' privilege as to all written materials and oral information not reflecting the attorney's legal thoughts"].)  "The language of section 2018.030 does not otherwise define or describe 'work product.'  Courts have resolved whether particular materials constitute work product on a case-by-case basis."  (*Coito*, at p. 488.)

The purpose of the privilege is twofold: to "[p]reserve the rights of attorneys to prepare cases for trial with that degree of privacy necessary to encourage them to prepare their cases thoroughly and to investigate not only the favorable but the unfavorable aspects of those cases"; and to "[p]revent attorneys from taking undue advantage of their adversary's industry and efforts."  (§ 2018.020, subds. (a) & (b).)

The work product privilege is held by the attorney, not the client.  (*Lasky, supra*, 172 Cal.App.3d at p. 278 [trustee's attorney "is the sole holder of the privilege and may effectively assert it even as against a client"]; *Lohman v. Superior Court* (1978) 81 Cal.App.3d 90, 101 [plaintiff could not invoke work product privilege to suppress answers given by plaintiff's former attorney in deposition because attorney is holder of the privilege]; cf. *Fellows v. Superior Court* (1980) 108 Cal.App.3d 55, 61-62 (*Fellows*) [work product privilege belongs to attorney, but may be waived by client in possession of the work product], disapproved on another ground in *Coito, supra*, 54 Cal.4th at p. 499.)

Further, the privilege "survives the termination of the litigation or matter in which the work product is prepared and may be claimed in subsequent litigation—whether related or unrelated to the prior matter—to preclude disclosure of the attorney's work product."  (*Fellows, supra*, 108 Cal.App.3d at

18

p. 62.) "The continuance of the attorney's work-product privilege for subsequent litigation applies both to work product which falls within the conditional portion of the privilege and to work product which falls within the absolute portion of the privilege." (*Id.* at pp. 62-63, fn. omitted; accord, *Lasky*, *supra*, 172 Cal.App.3d at p. 273 ["The privilege survives the termination of litigation during which it was developed."].)  As the *Fellows* court explained, continuation of the privilege furthers the policy behind creation of the privilege "'(1) to encourage the attorney to make a thorough preparation for trial, including analysis of unfavorable aspects of his case, as well as the favorable aspects, and (2) to prevent one attorney from taking undue advantage of another's industry and efforts.'" (*Fellows*, at p. 63.)

In *Coito, supra*, 54 Cal.4th 480, the Supreme Court set forth the proper process for a trial court to analyze an assertion of the work product privilege.  The question before the court in *Coito* was the level of work product protection afforded to recorded witness interviews conducted by investigators and lists of witnesses from whom written or recorded statements had been taken (requested in Judicial Council Form Interrogatory No. 12.3).  (*Id.* at pp. 494-499, 501-502.)  With respect to witness interviews, the court observed it was likely but not certain the interviews would reveal attorney work product, for example, if the "witness's statements are 'inextricably intertwined' with explicit comments or notes by the attorney stating his or her impressions of the witness," or if the attorney's line of inquiry revealed the attorney's theory of the case or evaluation of issues. (*Id.* at p. 495.)  Because witness statements would not always reveal the attorney's thought process, "[a]n attorney resisting discovery of a witness statement based on absolute privilege must

19

make a preliminary or foundational showing that disclosure would reveal his or her 'impressions, conclusions, opinions, or legal research or theories.' (§ 2018.030, subd. (a).) Upon an adequate showing, the trial court should then determine, by making an in camera inspection if necessary, whether absolute work product protection applies to some or all of the material." (*Coito,* at pp. 495-496.)

The *Coito* court held that even if witness statements are not entitled to absolute protection, they are at least entitled to qualified work product protection because their disclosure would undermine the statutory policy of preventing attorneys from taking undue advantage of their adversary's efforts and discourage attorneys from preparing their cases thoroughly and investigating favorable and unfavorable aspects of their case. (*Coito, supra*, 54 Cal.4th at p. 496.) Thus, because the qualified privilege applies, the "party seeking disclosure has the burden of establishing that denial of disclosure will unfairly prejudice the party in preparing its claim or defense or will result in injustice." (*Id.* at p. 499.)

As to lists identifying witnesses who had given statements, the Supreme Court reasoned the lists could in some instances reveal an attorney's impressions of the case, for example, the attorney's selection of certain witnesses from a larger pool, but it would not "always or even often be the case that a witness list . . . reflects counsel's premeditated and carefully considered selectivity." (*Coito, supra*, 54 Cal.4th at p. 502.) Thus, the party objecting to disclosure "may be entitled to protection if it can make a preliminary or foundational showing that answering the interrogatory would reveal the attorney's tactics, impressions, or evaluation of the case, or would result in opposing counsel taking

20

undue advantage of the attorney's industry or efforts." (*Ibid*.) "Upon such a showing, the trial court should then determine . . . whether absolute or qualified work product protection applies to the material in dispute." (*Ibid*.; see *McVeigh v. Recology San Francisco* (2013) 213 Cal.App.4th 443, 474 [vacating trial court's denial of motion to compel names of witnesses who had been interviewed, noting motion could be renewed in light of *Coito*].)

We are not aware of any controlling authority, nor have the parties cited to any, specifically addressing whether the identity of a nontestifying expert is protected as work product. Curtis relies on an unpublished federal district court decision in which the court rejected a provision of a proposed protective order that would have required identification of nontestifying experts who would receive confidential information under the protective order, holding that "a non-testifying expert's identity is protected from discovery absent a showing of exceptional circumstances." (*LivePerson, Inc. v. 24/7 Customer, Inc.* (S.D.N.Y. July 30, 2015, No. 14 civ. 1559 RWS) 2015 U.S.Dist. Lexis 99782, at *5 (*LivePerson*); accord, *Ager v. Jane C. Stormont Hospital & Training School for Nurses* (10th Cir. 1980) 622 F.2d 496, 503 (*Ager*) ["[W]e hold that the identity, and other collateral information concerning an expert who is retained or specially employed in anticipation of litigation, but not expected to be called as a witness at trial, is not discoverable except as [provided in federal rule requiring physical or mental exam] . . . or upon a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means." (Fn. omitted.)]; but see *Del. Display Group LLC v. Lenovo Group Ltd.* (D.Del. Feb. 23, 2016, Civ. A. No. 13-2109-RGA) 2016 U.S. Dist.

21

Lexis 21461, at *19-20, fn. 10 (*Del. Display Group*) ["District courts in the Third Circuit, however, have . . . held that the 'disclosure of [an] expert's identity . . . is not subject to a heightened showing of "exceptional circumstances."'"].)

We are not bound by federal cases (*People v. Troyer* (2011) 51 Cal.4th 599, 610), and moreover, *LivePerson* and *Ager* lack persuasive value because the holdings were based on Federal Rules of Civil Procedure, rule 26(b)(4)(D) (28 U.S.C.),[10] not California's statutory work product provision. Rule 26(b)(4)(D) expressly holds the facts or opinions of a retained, nontestifying expert are not discoverable absent exceptional circumstances, and the courts in *Ager* and *LivePerson* considered the policy reasons for extending that protection to the identity of the nontestifying experts. (See *Ager, supra*, 622 F.2d at p. 503 ["There are several policy considerations supporting our view."].) And, as the *Del. Display Group* and *LivePerson* courts observed, there is a split in federal authority as to the standard under federal law for disclosure of the identity of expert witnesses. (*Del. Display Group, supra*, at *19-20, fn. 10; *LivePerson, supra*, at *4 ["Some courts, though not all, have read this discovery

---

[10]    Federal Rules of Civil Procedure, rule 26(b)(4)(D) (28 U.S.C.) provides, "Ordinarily, a party may not, by interrogatories or deposition, discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial."

22

limitation as applying not only to facts and opinions, but also to the identity of non-testifying experts."].)[11]

Curtis's citation to California cases that hold the opinions and reports of nontestifying experts are entitled to work-product protection is likewise not persuasive because none of the cases addresses whether the identity of a nontestifying expert is privileged. (See *Scotsman Mfg. Co v. Superior Court* (1966) 242 Cal.App.2d 527, 530 [trial court order compelling disclosure of consultant report was an abuse of discretion where it was unsettled whether consultant would testify]; *Swartzman v. Superior Court* (1964) 231 Cal.App.2d 195, 202-203 ["[c]onsultation between expert and counsel may appropriately be given broad immunity from discovery" until the expert is called as a witness at trial and shown to be qualified to present competent expert testimony].)

The cases cited by CELA for the proposition the identity of a percipient witness is generally not shielded by the work product privilege similarly offer no guidance, and they all predate the Supreme Court's decision in *Coito*. (See *Huffy Corp. v. Superior Court* (2003) 112 Cal.App.4th 97, 109 [identities of witnesses to possible violations of pollution laws were not subject to attorney-client or work product privileges]; *Aerojet-General Corp. v.*

---

[11] *Times Mirror Co. v. Superior Court* (1991) 53 Cal.3d 1325, 1341-1343, relied on by Curtis, is inapposite. The Supreme Court in *Times Mirror* addressed whether the Governor's appointment calendars were exempt from disclosure under the Public Records Act (Gov. Code, § 6250 et seq.). The attorney work product privilege was not at issue, and the disclosure of the individuals with whom the Governor met could have revealed the Governor's thought process, whereas Curtis has already disclosed Doe 1 is a plaintiffs'-side attorney he consulted to hone his trial strategy.

*Transport Indemnity Insurance* (1993) 18 Cal.App.4th 996, 1004 [name of independent insurance adjuster who had investigated a prior industrial accident at defendant's facility was not protected work product]; but see *City of Long Beach v. Superior Court* (1976) 64 Cal.App.3d 65, 73 [compelled disclosure of the identity of witnesses opposing counsel intended to call at trial violated the qualified work product privilege because it would reflect the attorney's evaluation of the strengths and weaknesses of his case].)

We conclude the reasoning in *Coito, supra*, 54 Cal.4th at pages 501 to 502 with respect to identification of witnesses who had given statements to an attorney is most analogous to an attorney's identification of a nontestifying expert—that it would not "always or even often be the case that [the disclosure] . . . reflects counsel's premeditated and carefully considered selectivity." Thus, the objecting party may be entitled to protection under the work product privilege if it can make a preliminary or foundational showing that identifying the nontestifying expert "would reveal the attorney's tactics, impressions, or evaluation of the case, or would result in opposing counsel taking undue advantage of the attorney's industry or efforts." (*Id.* at p. 502.)[12] If the disclosure would reveal the

_____

[12] The Supreme Court in *Coito* posited a scenario in which an attorney investigating a bus accident took statements from only 10 of 50 surviving passengers as an example where the disclosure of a list of witnesses who gave statements could reveal the attorney's impressions or evaluation of the case. (*Coito, supra*, 54 Cal.4th at p. 501.) As the court explained, "[D]isclosure of the list may well indicate the attorney's evaluation or conclusion as to which witnesses were in the best position to see the cause of

24

attorney's tactics, impressions, or evaluation of the case, the information would be entitled to absolute protection; if the disclosure would allow opposing counsel to take undue advantage of the attorney's efforts or impair the privacy necessary for the attorney to investigate not only the favorable but unfavorable aspects of the case, a qualified protection would apply.[13] (§ 2018.030, subds. (a) & (b).)

_____

the accident." (*Ibid*.)  In addition, the list may be entitled to a qualified privilege because it may reflect the attorney's industry and efforts in locating and selecting the witnesses to interview. (*Ibid*.)  An attorney's disclosure of the identity of his or her nontestifying expert may similarly be entitled to protection where, for example, an attorney in a medical malpractice case consults with an anesthesiologist instead of a cardiologist, which might reveal the attorney's focus on a specific medical condition.

[13]     Because *Coito* involved a request for disclosure of writings—recorded statements and a list of witnesses—the Supreme Court did not reach the question whether the absolute privilege under section 2018.030, subdivision (a), which by its own terms applies only to a "writing," also applies to unwritten work product, such as the name of a witness.  The Court of Appeal in *Fireman's Fund Ins. Co. v. Superior Court* (2011) 196 Cal.App.4th 1263, concluded in light of the legislative history, the decisional law interpreting Federal Rules of Civil Procedure, rule 26(b)(3), and the objective to interpret statutes to avoid absurd results that "unwritten opinion work product is entitled to the protection of the absolute work product privilege in California." (*Fireman's Fund*, at pp. 1279, 1281.)  The court explained, "[T]here is every indication in the legislative history that the California law was intended to absolutely protect opinion work product in every form, and no indication that it was intended to provide lesser protection for unwritten work product."

D. *The Trial Court Did Not Abuse Its Discretion in Compelling Curtis To Identify Doe 1*

Curtis contends the identity of Doe 1 is entitled to absolute work product protection under section 2018.030, subdivision (a), because disclosure would convey tactical information concerning Curtis's defense of the *Saccio* action and other employment law matters. CELA contends, and the trial court found, that Doe 1's identity is not protected as absolute or qualified work product because Doe 1 is a percipient fact witness in this action. As the party asserting the privilege, Curtis bears the burden to make a preliminary or foundational showing that the identification of Doe 1 implicates his absolute or qualified attorney work product privilege. (*Coito, supra*, 54 Cal.4th at p. 502.) Curtis has failed to show the identification of Doe 1 is entitled to absolute work product protection, but he has made a sufficient foundational showing that the information may be subject to qualified protection.

With respect to the absolute privilege, the identity of Doe 1 does not reflect Curtis's "impressions, conclusions, opinions, or legal research or theories." (§ 2018.030, subd. (a).) Curtis has already disclosed that Doe 1 is a plaintiffs'-side employment lawyer and that Curtis's strategy in defending employers is to consult a practitioner with experience as a lawyer for plaintiffs. Curtis has not offered any evidence the identification of this

---

(*Id.* at p. 1279.) We question whether the *Fireman's Fund* court properly construed section 2018.030, subdivision (a), given the unambiguous language in the statute affording an absolute privilege to a "writing" and a qualified privilege to "[a]ll other work product." (*Fireman's Fund*, at p. 1276.) But we do not reach the issue because we conclude the absolute protection does not apply here.

26

*particular* plaintiffs'-side employment lawyer reveals anything about Curtis's representation of Romasanta, his strategy in defending the *Saccio* action, or his tactics in future actions. (Cf. *Coito, supra*, 54 Cal.4th at p. 502 [selection of individuals from whom to take statements among many witnesses could potentially reveal trial strategy].) Certainly, as Curtis argues, there could be repercussions from the disclosure—for example, adversaries could retain Doe 1 to create a conflict so Curtis could no longer use Doe 1, and then attempt to discern from Doe 1 the strategies Curtis might deploy—but these arguments do not transmute Doe 1's identity into core work product entitled to absolute protection.

However, these concerns, as well as Curtis's fear that public disclosure would chill Doe 1 and discourage other plaintiffs'-side lawyers from consulting with Curtis, may affect Curtis's right to thoroughly prepare his case and investigate favorable and unfavorable aspects of the case, as well as to prevent "opposing counsel [from] taking undue advantage of [his] industry or efforts," thus implicating the qualified work product privilege. (*Coito, supra*, 54 Cal.4th at p. 486.) Accordingly, Curtis has made a foundational showing that identification of Doe 1 *may* be entitled to qualified work product protection under section 2018.030, subdivision (b). (*Coito*, at p. 502.)[14]

---

[14] Because the trial court did not analyze whether Curtis met his burden under the *Coito* standard to make a foundational showing that identification of Doe 1 was entitled to qualified work product protection, we do not decide that issue. Instead, we conclude that even if Curtis made a sufficient foundational showing, CELA met its burden to show it was still entitled to disclosure.

27

The trial court's finding that Doe 1's identity was not entitled to any work product protection (absolute or qualified) because Doe 1 is a fact witness in this action, regardless of his consulting role in the *Saccio* action, was erroneous. Although Doe 1 is a percipient witness in this action, any work product protection Curtis holds as to his use of Doe 1 in the *Saccio* action survives the termination of that action.[15] (*Fellows, supra*, 108 Cal.App.3d at pp. 61-62.) Doe 1's role in this action is relevant to a balancing of interests, but the fact Doe 1 is a fact witness in this action does not categorically negate any qualified work product privilege held by Curtis.[16]

---

[15] CELA contends Curtis has not shown Doe 1 was a consultant in the *Saccio* case because there was no written retention agreement and no record of payments. But CELA did not make this argument in its motion to compel, and it is forfeited on appeal. (*Johnson v. Greenelsh* (2009) 47 Cal.4th 598, 603 ["'issues not raised in the trial court cannot be raised for the first time on appeal'"]; accord, *Hanna v. Mercedes-Benz USA, LLC* (2019) 36 Cal.App.5th 493, 513.)

[16] CELA cites *Tucker Ellis LLP v. Superior Court (Nelson)* (2017) 12 Cal.App.5th 1233 to support its argument FBBC, not Curtis, holds the attorney-client privilege and Curtis does not have standing to assert the privilege. (*Id.* at pp. 1244-1245.) However, *Tucker Ellis* held a law firm did not need to obtain authorization from the former law firm attorney who created the work product for the firm to waive the privilege. (*Id.* at p. 1248.) Here, Curtis is currently a named partner at his firm, and another FBBC partner defended his deposition and instructed him not to answer CELA's questions concerning the identity of Doe 1. Unlike *Tucker Ellis*, there is no question of waiver, no

28

As discussed, for CELA to compel disclosure of Doe 1's identity notwithstanding the qualified work product privilege, CELA carries "the burden of establishing that denial of disclosure will unfairly prejudice [it] in preparing its claim or defense or will result in an injustice." (*Coito, supra*, 54 Cal.4th at p. 499; see § 2018.030, subd. (b).) CELA has met this burden. In support of its motion to compel, CELA's attorney declared that CELA had used information technology consultants and conducted an internal investigation to identify Doe 1, but it was not able to ascertain the identity of Doe 1. The "unavailability or inaccessibility of [a] witness[ ]" can provide a sufficient showing of prejudice. (*Coito*, at p. 497.) The prejudice to CELA is even greater in this case because CELA cannot prosecute the action until Doe 1 is identified. Thus, upholding Curtis's work product privilege would likely entirely foreclose CELA's action for breach of its confidential information.[17]

Curtis contends his interest in preserving the work product protection of Doe 1's identity outweighs CELA's interests

_____

separation between partner and firm, and no basis to find Curtis lacks standing to assert the privilege on behalf of the firm.

[17] Curtis suggests CELA could serve business subpoenas on all of its 1,300 members to find the offending member or ask the offender to step forward. But as CELA argues in its respondent's brief, not only would the cost of serving and pursuing 1,300 subpoenas be astronomical, but Doe 1 could ignore the subpoena and potentially avoid detection among the numerous recipients of the Secrest posting. And it is highly unlikely Doe 1 would voluntarily step forward to subject himself or herself to litigation and potential liability for damages.

in compelling disclosure.[18]  (See *2,022 Ranch v. Superior Court* (2003) 113 Cal.App.4th 1377, 1390 ["The determination of good cause contemplates a balancing of the need for disclosure against the purpose served by the work product doctrine."], disapproved on another ground in *Costco Wholesale Corp. v. Superior Court, supra,* 47 Cal.4th at p. 739.)  It does not.  As discussed, Curtis has already revealed he uses a plaintiffs'-side attorney to consult in representing employers in employment law cases.  The harm to Curtis from disclosure of the name of the specific attorney he used in the *Saccio* case (Doe 1), even if Curtis intends to use Doe 1 as a nontestifying expert in future cases, is unlikely to impair his relationship with Doe 1 such that Curtis cannot continue to use Doe 1 as a consultant.  Further, the circumstances of this case—in which Doe 1 is a defendant or key witness who can only be identified by the attorney who consulted with him in another matter—are so unusual that an order compelling disclosure is unlikely to chill Doe 1's interest in continuing to consult with Curtis or to discourage otherwise willing plaintiffs'-side lawyers from serving as a consultant for Curtis.  And if disclosure damages the relationship between

---

[18]     Curtis cites *National Steel Prods. Co. v. Superior Court* (1985) 164 Cal.App.3d 476 for the proposition that an assertion by the party seeking discovery of work product that it cannot obtain the information by other means is insufficient to overcome the qualified work product privilege.  But in *National Steel* the court only held that the need for a report prepared by the defendant as a nontestifying expert in a prior action was sufficiently compelling to require the trial court to conduct an in camera review of the report, weighing the impeachment value of the report against the conditional work product protection.  (*Id.* at p. 490.)

Curtis and Doe 1, the damage would have resulted from the consequences of Doe 1's alleged misappropriation of CELA's confidential information, not from Doe 1's fear of being ostracized for having consulted for a defense lawyer. In addition, Curtis has not demonstrated that if he can no longer consult with Doe 1, he would not be able to engage another plaintiffs'-side employment lawyer. Further, Curtis's concern that opposing counsel will retain Doe 1 to prevent Curtis from using him or her is speculative. Doe 1 is free to decline representation of an opposing party. Under these circumstances, the court did not abuse its discretion in finding CELA had met its burden to demonstrate prejudice under section 2018.030, subdivision (b).

## DISPOSITION

The appeal is dismissed. We deny the petition for writ of mandate seeking to reverse the order compelling disclosure. CELA is to recover its costs in this proceeding.

FEUER, J.

We concur:


PERLUSS, P. J.


McCORMICK, J.*

---

* Judge of the Orange County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.